6 A.3d 907

Kenneth Martin STACHOWSKI, Jr.

v.

STATE of Maryland.

Wayne Stockstill

v.

State of Maryland.

Nos. 52 and 16, Sept. Term, 2008.

Court of Appeals of Maryland.

Oct. 22, 2010.

Celia Anderson Davis, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore, MD), on brief, for appellant in No. 52, Sept. Term, 2008.

Jeremy M. McCoy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for appellee in No. 52, Sept. Term, 2008.

Russell P. Butler, Lauren Tabackman, Maryland Crime Victims' Resource Center, Inc., Upper Marlboro, MD, brief of Amicus Curiae Maryland Crime Victims' Resource Center, Inc.

Rachel Marblestone Kamins (Gary E. Bair of Bennett & Bair, LLP, Greenbelt, MD), on brief, for appellant in No. 16, Sept. Term, 2008.

Mary Ann Ince, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for appellee in No. 16, Sept. Term, 2008.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, JOHN C. ELDRIDGE (Retired, Specially Assigned), and LAWRENCE F. RODOWSKY, (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE, J. (Retired, Specially Assigned).

These two cases present the same issue concerning the certiorari jurisdiction of this Court, although the cases are otherwise unrelated. Since that jurisdictional issue is dispositive in this Court, and requires that the previously issued writ of certiorari in each case be dismissed, we shall consider the cases in a single opinion.

I.

The facts in each case pertinent to the jurisdictional issue are as follows.

A. *Stachowski v. State*

This case began in 2005 when Kenneth Martin Stachowski was charged in the District Court of Maryland, Somerset County, with theft under $500. The charge was based upon Stachowski's giving, in June 2005, a bad check in the amount of $182.86 to a company known as Somerset Well Drilling. Upon Stachowski's request for a jury trial, the case was transferred to the Circuit Court for Somerset County and was given case number 8089. Stachowski made full restitution to Somerset Well Drilling prior to the trial of the case in the Circuit Court. The case was called for trial in the Circuit Court for Somerset County on October 11, 2006. Stachowski waived a jury trial, pled guilty, and, after the prosecuting attorney recounted the factual basis for the guilty plea, Stachowski was found guilty.

At the same time that this trial of the bad check case took place, the Circuit Court also heard *de novo* appeals from the District Court in three violation of probation cases (Circuit Court case numbers 8150, 8151, and 8152). These three cases were factually and legally unrelated to the present bad check

case except that Stachowski was also the defendant. Case numbers 8150, 8151, and 8152 were based upon three District Court prosecutions charging Stachowski with violations of Maryland's home improvement laws. The victims were Ruth Daniels, Darlene Wright, and Emma Daniels. At the conclusion of the District Court trials, Stachowski was found guilty of violating the home improvement laws, was placed on probation, and was ordered to make restitution to the three victims.

Stachowski did not appeal from the convictions in the District Court home improvement cases. Later, however, the District Court determined that Stachowski was in violation of probation because of his failure to make restitution to the three victims of the home improvement violations. Stachowski appealed to the Circuit Court from the District Court orders revoking probation. As previously indicated, these three appeals (numbers 8150, 8151, and 8152) were heard *de novo* along with the trial in the bad check case (number 8089). In case numbers 8150, 8151, and 8152, Stachowski testified that he was unable to make the restitution payments to the three victims because of numerous financial and legal problems which he and his family were facing. The circuit judge revoked probation in case numbers 8150, 8151, and 8152, and imposed sentences in those three cases as well as in the bad check case (number 8089), with portions of each sentence suspended in favor of periods of probation.

The action of the Circuit Court which gave rise to the appellate proceedings in this Court was a restitution order which was part of the judgment in the bad check case (number 8089). Despite the fact that Stachowski had already made full restitution to the victim in the bad check case, the circuit judge required, as a condition of probation in case number 8089, that Stachowski also make restitution to the three victims in the home improvement appeals, case numbers 8150, 8151, and 8152. The judge stated (emphasis added):

"In all cases I'm going to waive fines, costs and fees given the amount of restitution that's due.

"In 8150 the amount of restitution due is two thousand one-forty-two-eighty-five. The amount of restitution in 8151–that's to Darlene Wright—two thousand one-forty-two-eighty-five. Ruth Daniels is eight thousand nine hundred and ninety-seven dollars. Restitution is ordered in both of those cases. Likewise in 8152 restitution in the amount of four thousand one hundred and fifty dollars is owed to Emma Daniels.

"*As a condition of his probation in 8089* he's to make restitution to those three victims in the amount of three hundred dollars per month beginning thirty days from the last—

"DEFENSE ATTORNEY: The end of the first full calendar month?

"THE COURT: The end of the first calendar month. He's allowed on work release."

On November 9, 2006, Stachowski filed in the Court of Special Appeals applications for leave to appeal in the present bad check case (number 8089) as well as in the three home improvement appeals (numbers 8150, 8151, and 8152). Pursuant to Maryland Rule 8–132, the Court of Special Appeals transferred the three home improvement cases to this Court.[1] The reason for the transfer was that the Court of Special Appeals has no jurisdiction to review decisions of the Circuit Courts where the Circuit Courts, in the exercise of their appellate jurisdiction, entertain appeals from final judgments of the District Court of Maryland. Further appellate review of Circuit Court decisions in such cases is exclusively by

---

1. Rule 8–132 provides as follows:

"**Rule 8–132. Transfer of appeal improperly taken.**

"If the Court of Appeals or the Court of Special Appeals determines that an appellant has improperly noted an appeal to it but may be entitled to appeal to another court exercising appellate jurisdiction, the Court shall not dismiss the appeal but shall instead transfer the action to the court apparently having jurisdiction, upon the payment of costs provided in the order transferring the action."

See, e.g., *Usiak v. State,* 413 Md. 384, 394 n. 9, 993 A.2d 39, 44 n. 9 (2010); *Bienkowski v. Brooks,* 386 Md. 516, 550–552, 873 A.2d 1122, 1142–1143 (2005).

discretionary writ of certiorari issued by this Court. *See* Maryland Code (1974, 2006 Repl.Vol.), § § 12–305 and 12–307(2) of the Courts and Judicial Proceedings Article.

After the Court of Special Appeals transferred the three home improvement cases to this Court, Stachowski filed in this Court a "supplemental" certiorari petition, asking the Court to review the Circuit Court's judgments in the home improvement cases. This Court initially denied the certiorari petition, but, on motion for reconsideration, the Court on August 22, 2007, granted the petition and issued a writ of certiorari in the three home improvement cases. *Stachowski v. State,* 400 Md. 647, 929 A.2d 890 (2007). Following briefing and argument, this Court on January 9, 2008, in an opinion by Judge Battaglia, dismissed the writ of certiorari. *Stachowski v. State,* 403 Md. 1, 939 A.2d 158 (2008). The Court pointed out that the issue presented by Stachowski in his supplemental petition, which the Court had determined warranted the issuance of the writ of certiorari, was whether the Circuit Court "err[ed] in ordering restitution to three victims as a condition of probation in a fourth unrelated case in which no restitution was due." *Stachowski,* 403 Md. at 9, 939 A.2d at 162–163. The Court then held the writ must be dismissed "because the legality of the restitution order in the theft case is not before us" (403 Md. at 10, 939 A.2d at 163), and "a reversal of the Circuit Court orders in the home improvement cases ... would have no effect on the restitution order in the theft case" (403 Md. at 12–13, 939 A.2d at 165). The dismissal of the writ of certiorari finally terminated appellate proceedings in the three home improvement cases.

As earlier stated, Stachowski also filed in the Court of Special Appeals an application for leave to appeal in the present case, the bad check prosecution. The Court of Special Appeals on May 29, 2007, filed a one-sentence order denying the application. Stachowski filed a motion for reconsideration, and the Court of Special Appeals, in a brief order on May 13, 2008, recalled the May 29, 2007, order. Next, on May 28, 2008, the Court of Special Appeals, in another brief order signed only by the Chief Judge, granted the application for

leave to appeal, transferred the case to the regular appeal docket, set a briefing schedule, and scheduled the oral argument for the Court of Special Appeals' September 2009 session.

By order dated July 23, 2008, this Court, on its own motion, ordered that a writ of certiorari should issue in the present case, established a briefing schedule, and set the oral argument for the November 2008 session of this Court. A writ of certiorari to the Court of Special Appeals was issued by the Clerk of this Court on the same date. *Stachowski v. State*, 405 Md. 348, 952 A.2d 224 (2008). It should be noted that, when the writ of certiorari was issued in the present case on July 23, 2008, this Court had disposed of the three home improvement cases more than six months earlier, on January 9, 2008.

The initial briefing and oral argument in this case addressed only one issue, the validity of the Circuit Court's restitution order. Subsequent to the initial oral argument, however, this Court noticed a jurisdictional issue which had not previously been raised by the parties or by the Court. Consequently, we issued an order directing the parties to file supplemental briefs, and reargue the case, on the issue of whether this Court has jurisdiction to decide the case on its merits in light of Maryland Code (1974, 2006 Repl.Vol.), § 12–202 of the Courts and Judicial Proceedings Article. That statute provides as follows:

"§ 12–202. Exceptions.

A review by way of certiorari may not be granted by the Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted:

(1) Leave to prosecute an appeal in a post conviction proceeding;

(2) Leave to appeal from a refusal to issue a writ of habeas corpus sought for the purpose of determining the right to bail or the appropriate amount of bail;

(3) Leave to appeal in an inmate grievance commission proceeding;

(4) Leave to appeal from a final judgment entered follow-ing a plea of guilty in a circuit court; or

(5) Leave to appeal from an order of a circuit court revoking probation."

The parties filed supplemental briefs, and the case was rear-gued on the same day as the reargument in *Stockstill v. State.*

### B. *Stockstill v. State*

In September 1980, Wayne Stockstill was convicted, in the Circuit Court for Prince George's County, of first degree rape, first degree sexual offense, assault, and second degree rape. On December 12, 1980, the court imposed sentences of life imprisonment for first degree rape and first degree sexual offense, and twenty years imprisonment for second degree rape to run concurrently with the life sentences. The assault conviction was merged into the other convictions for purposes of sentencing.

More than 20 years later, as a result of a proceeding under the Maryland Uniform Postconviction Procedure Act, Mary-land Code (2001, 2008 Repl.Vol.), §§ 7–101 through 7–301 of the Criminal Procedure Article, the Circuit Court for Prince George's County allowed Stockstill to file, pursuant to Mary-land Rule 4–345, a belated motion for modification of his sentences. The motion for modification was filed and was granted. Stockstill's two life imprisonment sentences were made concurrent, with each sentence having all but forty years suspended, and with five years' supervised probation upon release. One of the conditions of the supervised proba-tion was that Stockstill enroll in a program of the National Institute for the Study, Prevention and Treatment of Sexual Trauma, under the direction of Dr. Fred Berlin who was either a psychologist or a psychiatrist. Stockstill was paroled on May 12, 2005.

In November 2006, however, Stockstill was charged both with violating conditions of parole and with violating condi-tions of probation. The charges were based upon Stockstill's admissions that he had smoked marijuana on one occasion,

had solicited a prostitute at three separate times, and had occasionally consumed alcoholic beverages. The admissions were first made during a polygraph examination taken at Dr. Berlin's direction. The polygraph examiner, without Dr. Berlin's or Stockstill's permission, gave the results to Stockstill's probation agent who later reviewed them with Stockstill. Stockstill made the same admissions to the probation agent during that review.

In January 2007, the Maryland Parole Commission found that Stockstill was not guilty of violating parole. Nevertheless, in February 2007, the Circuit Court found that Stockstill violated three conditions of probation. The Circuit Court ordered that his probation be revoked, and the court reinstated the previously suspended life sentences with credit for time served.

Stockstill filed in the Court of Special Appeals a timely application for leave to appeal from the Circuit Court order revoking his probation. On September 25, 2007, in an order signed only by the Chief Judge of the Court of Special Appeals, that court granted the application for leave to appeal. The issue presented by Stockstill to the Court of Special Appeals was "[w]hether the Circuit Court's judgment revoking [Stockstill's] probation should be vacated and probation reinstated because the revocation was based on evidence admitted in violation of the Maryland psychiatrist-patient privilege statute." [2]

Prior to any Court of Special Appeals' action concerning the merits of Stockstill's appeal or disposing of the appeal, this Court on May 7, 2008, *sua sponte* issued a writ of certiorari and set the case for argument during the September 2008 session. *Stockstill v. State*, 404 Md. 659, 948 A.2d 70 (2008). Like the *Stachowski* case, the initial briefing and oral argument in this Court dealt with a single issue relating to the merits of the case. That issue was whether Stockstill's proba-

---

2. *See* Maryland Code (1974, 2006 Repl.Vol.), § 9–109 of the Courts and Judicial Proceedings Article, entitled "Communications between patient and psychiatrist or psychologist."

tion was revoked based on evidence admitted in violation of the psychiatrist-patient privilege. Again, after briefing and argument, we noticed the same jurisdictional issue presented by the *Stachowski* case. We issued an order setting the case for reargument and directing the parties to file supplemental briefs on the issue of whether this Court can exercise jurisdiction in light of § 12–202 of the Courts and Judicial Proceedings Article. As previously indicated, this case and *Stachowski* were reargued on the same day.[3]

## II.

### A.

■ Although none of the parties raised a jurisdictional issue in these cases, this Court is obligated to address *sua sponte* the issue of whether we can exercise jurisdiction. Just recently this Court, in ordering the dismissal of a case, emphasized that "we must dismiss a case *sua sponte* on a finding that we do not have jurisdiction." *Miller & Smith v. Casey PMN*, 412 Md. 230, 240, 987 A.2d 1, 7 (2010).

A case following a procedural path similar to that in the case at bar was *Shell Oil Co. v. Supervisor*, 276 Md. 36, 343 A.2d 521 (1975). In *Shell*, neither party raised an issue concerning this Court's jurisdiction, but, while the case was pending in this Court, we issued an order requesting the parties, in briefs and oral argument, to address whether this Court could exercise jurisdiction over the merits of the appeal. After holding that we could not exercise jurisdiction, we transferred the case to a court having jurisdiction.[4] *See also,*

---

**3.** Supplemental orders, filed after the issuance of writs of certiorari and often filed after initial briefing and argument, directing the parties to brief and/or reargue a jurisdictional or similar basic issue noticed by the Court, are not uncommon; they have the effect of amending the Court's original certiorari order and adding an issue or issues. *See, e.g., Bienkowski v. Brooks*, 386 Md. 516, 530, 873 A.2d 1122, 1130 (2005), and cases there cited.

**4.** In the two cases now before us, since the writs of certiorari were issued before the cases were decided by the Court of Special Appeals,

*e.g.,* Maryland Rule 8–131(a); *In re Nicole B.,* 410 Md. 33, 62, 976 A.2d 1039, 1056 (2009) (" 'Where appellate jurisdiction is lacking, the appellate court will dismiss the appeal *sua sponte,*'" quoting *Eastgate Associates v. Apper,* 276 Md. 698, 701, 350 A.2d 661, 663 (1976)); *Wildwood Medical v. Montgomery County,* 405 Md. 489, 494, 954 A.2d 457, 460 (2008); *Duffy v. Conaway,* 295 Md. 242, 254, 455 A.2d 955, 961 (1983); *East v. Gilchrist,* 293 Md. 453, 458, 445 A.2d 343, 345 (1982); *Biro v. Schombert,* 285 Md. 290, 293, 402 A.2d 71, 73 (1979).

### B.

Section 12–202 of the Courts and Judicial Proceedings Article sets forth the following mandate (emphasis added): "A review by way of certiorari may not be granted by the Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted" leave to appeal in five categories of cases. The two categories applicable to the present cases are "(4) Leave to appeal from a final judgment entered following a plea of guilty in a Circuit Court" and "(5) Leave to appeal from an order of a Circuit Court revoking probation." The *Stachowski* case falls into the fourth category, and the *Stockstill* case falls into the fifth category.

The State advances two alternative arguments in support of its position that the writs of certiorari should be dismissed for lack of jurisdiction. First, the State submits that § 12–202 is an extremely broad limitation upon this Court's certiorari jurisdiction, covering every case where appellate review in the Court of Special Appeals is by application for leave to appeal. Under this view, the Court would be totally deprived of subject matter jurisdiction in any case within the five "leave to appeal" categories set forth in § 12–202. The State relies upon a dissenting opinion which directly supports this construction of § 12–202, *Moss v. Director,* 279 Md. 561, 569–572, 369 A.2d 1011, 1016–1017 (1977) (Orth, J., dissenting). Under this broad limitation upon our jurisdiction, the grounds for the

dismissals of the writs of certiorari will have the same effect as transfers to the Court of Special Appeals.

Court of Special Appeals' order denying or granting leave to appeal, as well as any substantive action taken by the Court of Special Appeals simultaneously with or after an order granting leave to appeal, are all irrelevant.[5]

Alternatively, the State advances a narrower position, contending that § 12–202 deprives this Court of jurisdiction where the Court of Special Appeals simply denied or granted the application for leave to appeal "without resolving or deciding any of the legal or factual merits of [the] application." (State's supplemental brief in *Stachowski* at 2). The State points out that, in the present cases, the "Court of Special Appeals reached no conclusions or decisions regarding the merits or outcome of [appellants'] claim[s] on appeal." (*Id.* at 11–12). Under either of the State's alternatives, this Court could not at this time exercise jurisdiction in the present cases.

Both appellants argue that this Court can exercise jurisdiction in these two cases because the Court of Special Appeals' orders did more than simply grant leave to appeal. The appellants rely upon the actions of the Court of Special Appeals placing the cases on the court's appeal docket. Thus, Stachowski argues (Stachowski's supplemental brief at 3–4):

"Here, because the Court of Special Appeals transferred the case to the regular appeal docket on May 28, 2008, this Court properly obtained jurisdiction on July 23, 2008, when it ordered that a writ of certiorari issue to the Court of Special Appeals."

Stockstill makes the same argument, relying on the fact that "the Court of Special Appeals transferred the case to its regular appeal docket." (Stockstill's supplemental opening brief at 5).

---

**5.** The State acknowledges that, in order to adopt its broad view of the limitation upon this Court's jurisdiction, the Court would have to "revisit" all of our prior opinions on the subject and adopt the dissenting opinion in *Moss v. Director,* 279 Md. 561, 569–572, 369 A.2d 1011, 1016–1017 (1977). (State's supplemental brief in *Stachowski* at 7–8 n. 1; State's supplemental brief in *Stockstill* at 11 n. 1).

## C.

We reject the broad limitation upon our jurisdiction advanced by the State. Instead, we adhere to a long line of cases in this Court which essentially support the State's alternative argument, under which the jurisdictional limitation is narrow. This Court has consistently construed § 12–202 as meaning "that the limitation upon this Court's jurisdiction set forth in § 12–202 ... relates only to the action of the Court of Special Appeals in granting or denying an application for leave to appeal." *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981). The *Williams* opinion continued (292 Md. at 210–211, 438 A.2d at 1305, emphasis added):

"Except for the nonreviewability of that specific action [granting or denying the application for leave to appeal], we have jurisdiction over the type of cases listed in § 12–202 to the extent that such jurisdiction is conferred by § 12–201 or other statutory provisions. Therefore, in the present case, although we may not review the Court of Special Appeals' exercise of discretion in granting the State's application for leave to appeal, *we are authorized to review that court's decision on the merits remanding the case to the trial court.*"

*Williams v. State, supra,* was an action under the Maryland Uniform Postconviction Procedure Act; accordingly, it was the type of action covered by subsection (1) of § 12–202. Williams had originally been convicted of second degree murder and assault with intent to murder, and the Circuit Court in the postconviction action awarded him a new trial on the ground that his right to be present at every stage of his criminal trial had been violated. The State filed in the Court of Special Appeals an application for leave to appeal. The intermediate appellate court, in a two-page opinion rendered by a panel of three judges, granted the State's application and summarily remanded the case to the Circuit Court for that court to determine whether Williams had waived his right to be present at his criminal trial. Williams filed a petition for a writ of certiorari which this Court granted. In its brief and at oral

argument in this Court, "[t]he State argue[d] that we have no jurisdiction whatsoever to review any case arising under the Post Conviction Procedure Act...." *Williams,* 292 Md. at 205, 438 A.2d at 1302.

This Court's opinion in *Williams* initially reviewed the legislative history of § 12–202, pointing out that the statutory language prior to the 1974 re-codification in the Courts and Judicial Proceedings Article read as follows (292 Md. at 206, 438 A.2d at 1303, emphasis in original):

> " '*except no such* [certiorari] *petition shall be entertained by the Court of Appeals from the denying or granting by the Court of Special Appeals of an application for leave to prosecute an appeal in post conviction and* ... [other] *proceedings* and from the denying or granting by the Court of Special Appeals of a petition for review filed under § 21 of this article.' "

Thus, we pointed out in *Williams,* 292 Md. at 207, 438 A.2d at 1303, that, under the above-quoted language, the "exception related only to 'the denying or granting' of the leave to appeal application" and,

> "[a]s the State concedes in its brief, if the Court of Special Appeals granted an application, this Court clearly was given authority *to review the merits of the Court of Special Appeals' decision.*" (Emphasis added.)

The State's position in *Williams,* however, was that

> "the 1974 re-codification was intended to change the law and deprive this Court of jurisdiction to review the merits of a case after the Court of Special Appeals granted leave to appeal...." (292 Md. at 208, 438 A.2d at 1304).

This Court disagreed with the State's argument that the 1974 recodification, with its wording modification, changed the meaning and expanded the scope of the jurisdictional limitation in § 12–202. In holding that the statutory language had the same meaning after 1974 as it did before 1974, the *Williams* opinion chiefly relied upon the interpretation of § 12–202 reflected in this Court's cases after the 1974 recodifi-

cation and upon the legislative acquiescence in that interpretation.

The principal case relied upon in *Williams* was *Jourdan v. State*, 275 Md. 495, 341 A.2d 388 (1975). *Jourdan* was a postconviction action in which the petitioner was challenging his criminal conviction on double jeopardy grounds. The Circuit Court in the postconviction action held that Jourdan was tried in violation of the double jeopardy prohibition, and that Jourdan was also denied the effective assistance of counsel. The Circuit Court set aside the conviction and sentence, and the State filed an application for leave to appeal. The Court of Special Appeals granted the State's application for leave to appeal, transferred the case to its regular appeal docket, and remanded the case to the Circuit Court. This Court granted Jourdan's petition for a writ of certiorari and reversed the judgment of the Court of Special Appeals. With regard to this Court's granting the certiorari petition, we held in *Jourdan* as follows (275 Md. at 506 n. 4, 341 A.2d at 394–395 n. 4, emphasis added):

"Under Maryland Code (1974), § 12–202(1) of the Courts and Judicial Proceedings Article, this Court has no jurisdiction to review a decision of the Court of Special Appeals granting or denying leave to appeal in a post conviction proceeding. However, once the Court of Special Appeals grants leave to appeal in such a case and transfers the case to its appeal docket, the matter takes the posture of a regular appeal, and we do have jurisdiction under § 12–201 of the Courts and Judicial Proceedings Article *to review the Court of Special Appeals' decision* on the appeal itself." [6]

The other case relied upon in *Williams* was *Moss v. Director, supra,* 279 Md. 561, 369 A.2d 1011. *Moss* was a case under the Defective Delinquent Act, Maryland Code (1957, 1976 Repl.Vol.), Art. 31B, a statute which has since been repealed. Under that statute, appellate review ih the Court of

---

[6] One judge did dissent in *Jourdan*. The dissent, however, did not concern this Court's exercise of jurisdiction, but it related to the majority's double jeopardy holding.

Special Appeals was by a discretionary application for leave to appeal rather than by a statutory right to appeal, and the application for leave to appeal was included in § 12–202. In *Moss,* the Court of Special Appeals granted the application for leave to appeal, transferred the case to its appeal docket, and, after briefing and oral argument, affirmed the judgment of the Circuit Court. This Court granted a petition for a writ of certiorari and, after briefing and argument, reversed the judgments of both courts below. Judge Orth filed a dissenting opinion from the Court's exercise of jurisdiction, maintaining that "there is no ambiguity whatsoever in the dictates of § 12–202" and that the "plain and certain language leaves nothing to be construed or interpreted." *Moss,* 279 Md. at 570, 369 A.2d at 1016. In Judge Orth's view, the Court's prior opinion in *Jourdan v. State, supra,* was contrary to the language of the statute. Judge Orth's dissent did not discuss the legislative history of § 12–202 but was based entirely on his view of the statutory language. Despite the dissenting opinion, the six-judge majority in *Moss* had no problem exercising jurisdiction.

Turning again to *Williams v. State, supra,* the *Williams* opinion pointed out that § 12–202 had been re-enacted with amendments twice since the opinion in *Jourdan v. State* was rendered. On neither occasion did the General Assembly change the interpretation of § 12–202 set forth in *Jourdan.* The Court in *Williams* continued (292 Md. at 210, 438 A.2d at 1305):

"The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation. *Harden v. Mass Transit Adm.,* 277 Md. 399, 406, 354 A.2d 817 (1976). This presumption is particularly strong whenever, after statutory language has been interpreted by this Court, the Legislature re-enacts the statute without changing in substance the language at issue. *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 322–323, 407 A.2d 738 (1979); *Director v. Cash,* 269 Md. 331, 345, 305 A.2d 833 (1973) *cert. denied sub nom. Vucci v.*

*Boslow, Institution Director,* 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974); *Macke Co. v. St. Dep't of Assess. & T.,* 264 Md. 121, 132–133, 285 A.2d 593 (1972); *Stack v. Marney,* 252 Md. 43, 49, 248 A.2d 880 (1969). Under these circumstances, it is particularly inappropriate to depart from the principle of stare decisis and overrule our prior interpretation of the statute. *White v. Prince George's Co.,* 282 Md. 641, 657–658, 387 A.2d 260 (1978). *See also Flood v. Kuhn,* 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972)."

*Williams,* decided in 1981, thus held that the General Assembly's acquiescence in this Court's interpretation of § 12–202 made it particularly inappropriate to depart from the principle of stare decisis and overrule our prior interpretation of § 12–202. During the twenty-nine years since *Williams,* this Court has in several cases reaffirmed the interpretation of § 12–202 set forth in *Williams* and *Jourdan,* and the General Assembly has continued to acquiesce in that interpretation.[7]

A more recent opinion applying § 12–202 was *Grayson v. State,* 354 Md. 1, 10–12, 728 A.2d 1280, 1284–1285 (1999), which involved two postconviction cases by separate petitioners. In one case, the Court of Special Appeals denied leave to appeal, and in the other case, the intermediate appellate court "dismissed" the application for leave to appeal. This Court granted certiorari petitions in both cases, and the State "suggest[ed] that this Court lacks jurisdiction to review the Court of Special Appeals' decisions in these cases." *Grayson,* 354 Md. at 10, 728 A.2d at 1284. This Court, after reviewing the *Williams, Moss,* and *Jourdan* cases, and pointing out that "[t]he holding in *Williams* has been re-affirmed by us on several occasions" (354 Md. at 11, 728 A.2d at 1285), rejected the State's suggestion. The Court explained (354 Md. at 12, 728 A.2d at 1285):

---

7. Section 12–202 was re-enacted with amendments in 1983 (Ch. 295) and 1991 (Ch. 233), and on neither occasion was the *Williams* and *Jourdan* interpretation of the statute changed.

"The Court of Special Appeals' decisions in the two cases at bar were not simply discretionary determinations that there should be no appeals. Rather, the Court of Special Appeals decided the merits of an issue raised by both Grayson and Jackson, namely whether the instant petitions were allowable under Art. 27, § 645A(a)(2). Despite the insertion of the sentences stating that the applications for leave to appeal were denied, the intermediate appellate court did not simply exercise its discretionary authority not to entertain appeals. Instead, the Court of Special Appeals in both cases held that the post-conviction petitions were not allowable as a matter of law. *Compare McElroy v. State, supra,* 329 Md. 136, 617 A.2d 1068, where the Court of Special Appeals held that post conviction relief was not allowable because the petitioners had waived their right to post conviction relief, and where this Court exercised certiorari jurisdiction and affirmed the decisions of the Court of Special Appeals."

*See also, e.g., Cianos v. State,* 338 Md. 406, 407, 409, 659 A.2d 291, 292, 293 (1995) (emphasis added) ("[A]n order granting or denying that application [for leave to appeal] is not reviewable by this Court by way of certiorari. We may grant certiorari, however, when the intermediate appellate court makes a *decision* on an application for leave to appeal...." * * * "The Court of Special Appeals ... denied the petitioners' application because it determined that the issues raised by the application were moot"); *McElroy v. State,* 329 Md. 136, 145, 617 A.2d 1068, 1073 (1993)(The Court of Special Appeals, in addition to granting the petitioner's application for leave to appeal, entered a final judgment terminating the case in that court on the ground that the petitioner had waived his right to bring the action); *Sherman v. State,* 323 Md. 310, 311, 593 A.2d 670 (1991) (This Court, reaffirming *Williams, Moss,* and *Jourdan,* denied the certiorari petition for lack of jurisdiction, pointing out that "the Court of Special Appeals ha[d] simply denied [the] application for leave to appeal").

The General Assembly has acquiesced in this Court's interpretation of § 12–202 for thirty-five years since the *Jourdan*

case was decided in 1975. If, in 1981, it was "particularly inappropriate to depart from the principle of stare decisis and overrule our prior interpretation of the statute" (*Williams v. State,* 292 Md. at 210, 438 A.2d at 1305), it would be even more inappropriate today. Accordingly, as we have done on numerous prior occasions, we reject the State's broad interpretation of § 12–202.

## D.

The appellants' interpretation of § 12–202 fares no better than the State's broad interpretation of the statute. The appellants' view of the statute is flatly inconsistent with this Court's opinions from the *Jourdan* case to the present. Moreover, their position renders half of the statute nugatory. Under the appellants' interpretation, § 12–202 would only apply to denials of leave to appeal, and would not apply to grants of leave to appeal.

Both appellants rely upon the fact that "the Court of Special Appeals transferred the case to the regular appeal docket" as the jurisdictional basis authorizing this Court to issue writs of certiorari. (Stachowski's supplemental brief at 3–4; *see also* Stockstill's opening supplemental brief at 5). The chief decisional support for the appellants' theory is part of the passage from *Jourdan v. State,* 275 Md. at 506 n. 4, 341 A.2d at 395–396 n. 4, quoted earlier in this opinion, stating that "once the Court of Special Appeals grants leave to appeal . . . *and transfers the case to its appeal docket,* the matter takes the posture of a regular appeal and *we do have jurisdiction* under § 12–201 of the Courts and Judicial Proceedings Article to review the Court of Special Appeals' decision on the appeal itself." (Emphasis added). The appellants also find support in similar language from the opinion in *Williams v. State.*

In their reliance upon the above-quoted passage from *Jourdan,* however, the appellants focus on the first part of the sentence, but they overlook the remainder of the same sentence which delineates the Court of Special Appeals' action over which we do have jurisdiction. The latter part of the

sentence from *Jourdan* is that *"we do have jurisdiction* under § 12–201 of the Courts and Judicial Proceedings Article *to review the Court of Special Appeals'* decision on the appeal itself." (Emphasis added).

In all of the prior cases where the Court of Special Appeals granted or denied an application for leave to appeal, and where this Court exercised certiorari jurisdiction, the Court of Special Appeals had rendered a decision concerning the merits or viability of the appeal or the rights or status of a party. The appellants fail to cite a single example of this Court exercising certiorari jurisdiction in the absence of some sort of *decision* by the Court of Special Appeals going beyond the denial or grant of leave to appeal. Furthermore, the Court of Special Appeals' decisions in all of those prior cases were final judgments and terminated the cases in the intermediate appellate court.

Thus, in *Grayson v. State, supra,* 354 Md. at 12, 728 A.2d at 1285, in addition to dismissing the applications for leave to appeal, the Court of Special Appeals "decided the merits of an issue raised by both" petitioners and held that the actions "were not allowable as a matter of law." In *Cianos v. State, supra,* 338 Md. at 407–409, 659 A.2d at 293, the Court of Special Appeals, in denying the application for leave to appeal, also decided "that the issues raised by the application were moot."

In *McElroy v. State, supra,* 329 Md. at 145, 617 A.2d at 1073, the Court of Special Appeals, in addition to granting the petitioner's application for leave to appeal, entered final judgment terminating the case in that court on the ground that the petitioner had waived his right to bring the action. *See also, e.g., Williams v. State, supra,* 292 Md. at 204, 438 A.2d at 1302 (After granting an application for leave to appeal, the Court of Special Appeals decided the merits and remanded the case to the trial court); *Davis v. State,* 285 Md. 19, 22, 400 A.2d 406, 407 (1979) (Following the grant of leave to appeal, the Court of Special Appeals affirmed the judgment of the Criminal Court of Baltimore); *Curtis v. State,* 284 Md. 132, 137, 395 A.2d 464,

466 (1978)(The Court of Special Appeals granted leave to appeal and affirmed the Circuit Court's judgment); *Moss v. Director, supra,* 279 Md. at 564, 369 A.2d at 1013 (The Court of Special Appeals granted leave to appeal and affirmed the judgment below); *Jourdan v. State, supra,* 275 Md. at 505–506 and n. 4, 341 A.2d at 394–396 and n. 4 (Following its grant of an application for leave to appeal, the Court of Special Appeals reversed the judgment of the Circuit Court for Prince George's County).

The entire foundation for the appellants' jurisdictional argument is the phrase in the *Jourdan* opinion referring to the Court of Special Appeals' action granting leave to appeal and transferring the case to its appeal docket. To reiterate, the appellants take this language out of context, ignoring the remainder of the same sentence stating: "and we do have jurisdiction ... to review the Court of Special Appeals' *decision* on the appeal itself." *Jourdan,* 275 Md. at 506 n. 4, 341 A.2d at 395–396 n. 4, emphasis added.

In addition, this Court in *Williams* specifically addressed the matter of the Court of Special Appeals' action in placing the case on its appeal docket, and we held that it had no significance with regard to this Court's jurisdiction. At the conclusion of the jurisdictional discussion, the *Williams* opinion stated (292 Md. at 211 n. 3, 438 A.2d at 1305 n. 3):

"There is one fact distinguishing this case from *Jourdan* and *Moss.* In those cases, after granting the applications for leave to appeal, the Court of Special Appeals transferred the cases to its appeal docket and thereafter rendered decisions on the merits. In the present case, the Court of Special Appeals did not transfer the case to its appeal docket. However, *this difference in the internal administrative practice of the Court of Special Appeals does not affect our jurisdiction* .... "

A review of Court of Special Appeals' opinions in cases involving grants of leave to appeal discloses that cases where briefs are to be filed and oral argument scheduled, such as *Jourdan v. State* and *Moss v. Director,* are placed on the

appeal docket, whereas cases summarily disposed of, such as *Williams v. State,* are not. In *Williams,* the remand to the circuit court was in the same order as the grant of leave to appeal. The Court of Special Appeals' practice regarding its appeal docket is a logical internal administrative practice, but it has no relevance whatsoever to the meaning, purpose or scope of § 12–202 of the Courts and Judicial Proceedings Article.

 Finally, the appellants' interpretation of § 12–202 would never limit this Court's certiorari jurisdiction with respect to *grants* of leave to appeal. Whenever the Court of Special Appeals grants an application for leave to appeal, it will either summarily decide the case (*see, e.g., Williams v. State* ) or it will place the case on its appeal docket (*see, e.g., Jourdan v. State* ). The appellants agree, as this Court's opinions uniformly hold, that this Court has certiorari jurisdiction in cases where the Court of Special Appeals grants leave to appeal and summarily decides the merits or viability of the case or the rights or status of a party. The appellants also contend that this Court has certiorari jurisdiction in cases which the Court of Special Appeals grants leave to appeal and places on its appeal docket. All Court of Special Appeals' grants of leave to appeal fall into one or the other of these categories.

Consequently, under the appellants' view of the statute, this Court would always have certiorari jurisdiction when the Court of Special Appeals grants leave to appeal. The § 12–202 limitation upon this Court's certiorari jurisdiction would only apply to denials of leave to appeal. Section 12–202, however, expressly applies to "a case or proceeding in which the Court of Special Appeals has denied *or granted* . . . [l]eave to prosecute an appeal. . . ." Thus, the appellants' interpretation of § 12–202 renders the "grant" portion of the statute nugatory.

As Judge Harrell very recently pointed out for the Court in *McHale v. DCW Dutchship Island,* 415 Md. 145, 999 A.2d 969 (2010), however,

"[a]cceptance of the ... argument would render meaningless and nugatory the second clause of the section. 'We construe the [language of a statute] so as to give effect to each word so that no word, clause, sentence or phrase is rendered superfluous or nugatory.' *Foley v. K. Hovnanian at Kent Island, LLC,* 410 Md. 128, 152, 978 A.2d 222, 237 (2009)."

*See, e.g., Della Ratta v. Dyas,* 414 Md. 556, 570, 996 A.2d 382 (2010) ("[A] court should read a statute 'as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory,' " quoting *Addison v. Lochearn Nursing Home, LLC,* 411 Md. 251, 275, 983 A.2d 138, 153 (2009)); *Allen v. Dackman,* 413 Md. 132, 148, 991 A.2d 1216, 1225 (2010); *Bienkowski v. Brooks,* 386 Md. 516, 548, 873 A.2d 1122, 1141 (2005) ("[I]t is a settled principle of statutory or constitutional construction that a provision should not be construed so as to render it nugatory"), and cases there cited.

 The appellants' argument, that § 12–202's limitation upon this Court's jurisdiction is applicable only when the Court of Special Appeals denies leave to appeal, cannot be reconciled with the statute or the prior opinions of this Court. The statutory language and the opinions by this Court make it clear that this Court has certiorari jurisdiction over the types of cases set forth in § 12–202 only when the Court of Special Appeals rendered a *decision* on the merits or the viability of the appeal or the status or rights of a party. There is no case in this Court which supports the appellants' construction of the statute.[8]

---

**8.** The appellant Stockstill, at the conclusion of his brief, suggests that a dismissal of the writ of certiorari would not be consistent with "[c]oncerns for judicial economy and expediency" (Stockstill's supplemental opening brief at 8). The reason for this, according to Stockstill, is that the Court of Special Appeals would proceed to rule on the merits of the case, the losing party would file a certiorari petition, and this Court would dispose of the case "as originally intended." *(Ibid.).*

This Court, however, cannot ignore applicable statutory language because, in the view of some litigants, it would be expedient to do so. If § 12–202 should be amended, that is the function of the General

WRITS OF CERTIORARI IN BOTH NUMBERS *16* AND *52* DISMISSED. COSTS TO ABIDE THE RESULT IN THE COURT OF SPECIAL APPEALS.

HARRELL, ADKINS, and RODOWSKY, JJ., dissent.

ADKINS, J., dissenting.

I respectfully dissent from the majority's holding that Maryland Code (1974, 2006 Repl.Vol.), Section 12–202 of the Courts and Judicial Proceedings Article ("CJP"),[1] deprives us of jurisdiction over these cases. According to the majority, when an appeal falls within one of the five statutory categories of CJP Section 12–202,[2] and the Court of Special Appeals ("CSA") has granted leave to appeal, this Court must await a decision on the merits and may not exercise its bypass jurisdiction under Section 12–203.[3] This decision is an abrupt

---

Assembly. This Court is not authorized to amend statutes in the interests of "expediency" or "judicial economy." Moreover, there may be legitimate reasons, in "leave to appeal cases" where the Court of Special Appeals grants leave to appeal, for having the Court of Special Appeals review the merits and render an opinion prior to this Court's certiorari determination.

**1.** Unless otherwise provided, all statutory references are to Maryland Code, Courts and Judicial Proceedings Article.

**2.** CJP Section 12–202 provides:

A review by way of certiorari may not be granted by the Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted:

(1) Leave to prosecute an appeal in a post conviction proceeding;

(2) Leave to appeal from a refusal to issue a writ of habeas corpus sought for the purpose of determining the right to bail or the appropriate amount of bail;

(3) Leave to appeal in an inmate grievance commission proceeding;

(4) Leave to appeal from a final judgment entered following a plea of guilty in a circuit court; or

(5) Leave to appeal from an order of a circuit court revoking probation.

**3.** Section 12–203 reads:

If the Court of Appeals finds that review of the case described in § 12–201 of this subtitle is desirable and in the public interest, the Court of Appeals shall require by writ of certiorari that the case be

departure from thirty-five years of decisions from this Court holding that Section 12–202 applies only to bar review of the intermediate appellate court's decision to grant or deny leave to appeal.

### 1. The History of CJP Section 12–202

Importantly, the original form of Section 12–202 used very narrow language in limiting this Court's jurisdiction. The law, as enacted in 1966, read:

> [I]f it shall be made to appear to the Court of Appeals upon petition of any party, whether a defendant or the State, that a review is desirable and in the public interest, the Court of Appeals shall require, by certiorari or otherwise, any such case to be certified to the Court of Appeals for its review and determination, **except no such petition shall be entertained by the Court of Appeals from the denying or granting by the Court of Special Appeals of an application for leave** to prosecute an appeal in post conviction and defective delinquent proceedings and from the denying or granting by the Court of Special Appeals of a petition for review filed under § 21 of this article.

Maryland Code (1957, 1966 Cum.Supp.), Art. 5, § 21A (emphasis added).

When Section 21A was recodified as CJP Section 12–202 in 1973, the Governor's Commission to Revise the Annotated Code stated that the recodification was "merely a rearrangement of present law" for which "no changes [were] made." The Governor's Commission to Revise the Annotated Code, *Report No. 3B to the General Assembly of Maryland* at 3 (21 Sept. 1972) (hereafter "Report No. 3B"). Despite this reassurance to the legislators, the revision to the language of Section 12–202, enacted by Chapter 2 of the Acts of the First Special Session of 1973, included the following, revised language: "No review by way of certiorari may be granted by the

---

certified to it for review and determination. The writ may issue before or after the Court of Special Appeals has rendered a decision.

Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted" leave to appeal. This change introduced an ambiguity because it used language suggesting a substantive change, and a more expansive scope for Section 12–202.

The Revisor only worsened this ambiguity when it commented:

[T]he Court of Appeals **has no jurisdiction at all** to review cases in these categories. The present language refers in terms only to actions "denying or granting" leave to appeal or a writ of certiorari; it does not expressly prohibit review of a decision rendered after certiorari, for example, has been granted.

General Revisor's Note, Laws of Maryland, First Special Session of 1973, at 354 (emphasis added). This misinterpretation appears to be based on some unnamed conversation with a person associated with the Court of Appeals, perhaps the Clerk of Court, as it added the following rather unusual notation:

The revisor is informed that this view of the statute was adopted by the Court of Appeals when it withdrew its order granting certiorari in *Cherry v. State,* 9 Md.App. 416 [264 A.2d 887] (1970).

*Id.* It appears that the author of the Revisor's Note thought that the 1973 "clarifying" changes in language were offered by the Recodification Commission in an attempt to follow what the Revisor perceived to be the understanding of the Court of Appeals, rather than some legislative will to change the Court's jurisdiction from that set forth in the previous version of the statute.

I submit that the change made to Section 12–202 during recodification was an unorthodox attempt by the Revisor to incorporate into the plainly-worded statute an interpretation of that section expressed by someone associated with the Court of Appeals, but never stated in any opinion issued by this Court. The Revisor's unusual note cites as authority for this change, an order of the Court unaccompanied by an

opinion, which denied certiorari after originally granting it. The Revisor, in doing so, departs from the Governor's Commission's explicit statement that the amendment to the statute was a "mer[e] rearrangement" of the language without substantive change. *See* Report No. 3B. In a recent case we observed that, in the context of a recodification, the legislature, believing the Revisor's note to be accurate, may well follow it, even when it is erroneous. See *Parker v. State*, 402 Md. 372, 393–394, 936 A.2d 862, 875 (2007).[4]

This was the stance we took when addressing the 1973 recodification to Section 12–202 in the decade after its enactment. This Court was first called upon to reconcile the 1973 changes to the language of the statute, with its limited purpose and this Court's otherwise expansive *certiorari* jurisdiction in *Jourdan v. State*, 275 Md. 495, 341 A.2d 388 (1975). In *Jourdan*, we addressed the effect of Section 12–202 on our jurisdiction, but only in a footnote. There, the trial court set aside a criminal conviction, and the State applied to the CSA for leave to appeal. *Id.* at 505, 341 A.2d at 394. In that case, like here, the CSA granted leave to appeal and transferred the case to its regular appeals docket. *Id.* The CSA thereafter reversed the trial court decision, and we granted *certiorari* to review the decision on the merits. *Id.* at 506, 341 A.2d at 394. On the subject of jurisdiction, we simply said in a footnote:

---

4. As part of the recodification, the Revisor made certain comments regarding the "Bouse Act", Ch. 194 of the Acts of 1929, which dealt with the exclusionary rule. We recognized that these comments were based on a misguided interpretation:

In 1973, as an initial part of the project to revise the Maryland Code, the Revisor of the statutory provisions submitted to the General Assembly a proposed "Courts and Judicial Proceedings Article." The proposed statute repealed the Bouse Act because, in the view of the Revisor at that time, the Bouse Act was "unconstitutional" under *Mapp v. Ohio*. The Revisor's then view was erroneous, as the Bouse Act, to the extent that it required the exclusion of evidence, was entirely consistent with *Mapp v. Ohio*. . . . Nevertheless, the General Assembly presumably accepted the Revisor's position, and the Bouse Act was repealed . . .

*Id.;* (citing Ch. 2 of the Acts of the First Special Session of 1973, General Revisor's Note, Laws of Maryland, First Special Session of 1973, at 332).

Under Maryland Code (1974), § 12–202(1) of the Courts and Judicial Proceedings Article, this Court has no jurisdiction to review a decision of the Court of Special Appeals granting or denying leave to appeal in a post conviction proceeding. However, once the Court of Special Appeals grants leave to appeal in such a case and transfers the case to its appeal docket, the matter takes the posture of a regular appeal, and we do have jurisdiction under § 12–201 [5] of the Courts and Judicial Proceedings Article to review the Court of Special Appeals' decision on the appeal itself.

*Id.* at 506 n. 4, 341 A.2d at 394–395 n. 4.

The issue came up again two years later in *Moss v. Director,* 279 Md. 561, 569, 369 A.2d 1011, 1016 (1977) (Orth, J., dissenting) when it was raised sua sponte by Judge Orth in his dissent:

To me, there is no ambiguity whatsoever in the dictates of § 12–202. The plain and certain language leaves nothing to be construed or interpreted. The sure legislative intent is clearly expressed in the command that "[n]o review by way of certiorari may be granted by the Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted ..." leave to appeal in any of the three specified proceedings, one of which is the proceeding here—a defective delinquent proceeding.

The Court of Appeals has acknowledged that it has no jurisdiction to review a decision of the Court of Special Appeals granting or denying leave to appeal under § 12–202 in a post conviction proceeding. *Jourdan v. State,* 275 Md.

---

**5.** CJP Section 12–201 provides:

Except as provided in § 12–202 of this subtitle, in any case or proceeding pending in or decided by the Court of Special Appeals upon appeal from a circuit court or an orphans' court or the Maryland Tax Court, any party, including the State, may file in the Court of Appeals a petition for certiorari to review the case or proceeding. The petition may be filed either before or after the Court of Special Appeals has rendered a decision, but not later than the time prescribed by the Maryland Rules. In a case or proceeding described in this section, the Court of Appeals also may issue the writ of certiorari on its own motion.

495, 506, n. 4, 341 A.2d 388 (1975), Smith, J. dissenting on other grounds. But the Court justified review, despite the provisions of the statute[.]

*Id.* at 570–571, 369 A.2d at 1016–1017. The Moss majority opinion did not respond to the dissent's jurisdictional argument, and simply made its ruling on the merits.

Shortly after *Moss,* the leading case on this jurisdictional issue, *Williams v. State,* 292 Md. 201, 438 A.2d 1301 (1981), was written by Judge Eldridge. The Court in *Williams* declined to interpret Section 12–202 according to the recodified language, and instead confirmed *Jourdan's* narrow interpretation. *Id.* at 208–11, 438 A.2d 1301, 1304–05. The appeal arose after a criminal defendant challenged his conviction under the Post Conviction Procedure Act, and the post-conviction trial court granted the defendant a new trial. *Id.* at 204, 438 A.2d at 1302. The CSA granted the State's request for leave to appeal and remanded to the trial court for reconsideration. *Id.* Williams then sought writ of certiorari from this Court to appeal the remand, which we granted. *Id.* at 205, 438 A.2d at 1302.

In rejecting the State's argument in *Williams*—that Section 12–202 deprived this Court of jurisdiction to hear post-conviction cases at all[6]—our language was unmistakably clear in articulating the very limited scope of the jurisdictional restriction set forth in Section 12–202

> [W]e reaffirm the holdings in *Jourdan* and *Moss* that the limitation upon this Court's jurisdiction set forth in § 12–202 of the Courts and Judicial Proceedings Article **relates only to the action of the Court of Special Appeals in granting or denying an application for leave to appeal.** Except for the nonreviewability of **that specific action,** we have jurisdiction over the type of cases listed in § 12–202 to the extent that such jurisdiction is conferred by § 12–201 or other statutory provisions. Therefore, in the present case,

---

**6.** The State also argues here, as it did in *Williams,* that this Court has no jurisdiction to review any case arising under Section 12–202's listed categories.

although we may not review the Court of Special Appeals' exercise of discretion in granting the State's application for leave to appeal, we are authorized to review that court's decision on the merits remanding the case to the trial court.

*Id.* at 210–11, 438 A.2d at 1305 (emphasis added).

To support this departure from the language of the statute, Judge Eldridge relied on precedent and legislative acquiescence to judicial decisions:

The Legislature has re-enacted with amendments § 12–202 of the Courts and Judicial Proceedings Article on two occasions since the *Jourdan* case was decided in July 1975. *See* Ch. 678, § 4, of the Acts of 1977 and Ch. 311, § 3, of the Acts of 1977. It has also amended the Post Conviction Procedure Act twice since 1975. *See* Ch. 678, § 1, of the Acts of 1977 and Ch. 472, § 6, of the Acts of 1976. **On none of these occasions did the Legislature change the interpretation of those statutes set forth by this Court in** *Jourdan.*

**The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation.** This presumption is particularly strong whenever, after statutory language has been interpreted by this Court, the Legislature re-enacts the statute without changing in substance the language at issue. Under these circumstances, it is particularly inappropriate to depart from the principle of stare decisis and overrule our prior interpretation of the statute.

*Id.* at 209–10, 438 A.2d at 1305 (citations omitted) (emphasis added).

In subsequent cases involving Section 12–202, we applied the holdings of *Jourdan* and *Williams* to different factual circumstances, although never in a case involving Section 12–203 bypass jurisdiction. *See, e.g., Sherman v. State,* 323 Md. 310, 311, 593 A.2d 670, 670 (1991) (holding that § 12–202 bars jurisdiction when the CSA has simply *denied* an application for leave to appeal in a post-conviction proceeding); *Cianos v.*

*State,* 338 Md. 406, 407, 659 A.2d 291, 292 (1995) (holding that Section 12–202 does not apply where the Court of Special Appeals addresses the merits in a denial); *Grayson v. State,* 354 Md. 1, 12, 728 A.2d 1280, 1285 (1999) (holding that 12–202 does not bar jurisdiction where the Court of Special Appeals decisions "were not simply discretionary determinations that there should be no appeals.")

### 2. The Majority's Holding

The majority, I submit, erroneously interprets this legislative history and line of cases to suggest that Section 12–202 limits our ability to review certain pending appeals on the merits. As justification for this discordant holding, the majority relies on two propositions: (1) that the *Jourdan–Williams* line of cases suggests that bypass jurisdiction should be limited, and (2) that the plain language of Section 12–202 must be interpreted to limit our jurisdiction in these cases. I disagree with both of these propositions.

Rather than apply the clear rationale of *Williams* that Section 12–202 "relates only to the action of the CSA in granting or denying an application for leave to appeal," the majority effectively limits the holdings of *Williams* and its progeny to their specific factual or procedural circumstances. First, the majority distinguishes a series of cases in which the petitioner *did* challenge the actual decision of the CSA to deny leave to appeal.[7] Rather than foreclosing our jurisdiction here, these cases simply apply the statutory rule that the Court of Appeals shall not review the grant or denial of an application for leave to appeal.

---

7. *See Grayson,* 354 Md. at 9, 728 A.2d at 1284 (petitioner challenged "whether the Court of Special Appeals erred in dismissing [the] application for leave to appeal"); *Cianos,* 338 Md. at 409, 659 A.2d at 292–93 (petitioner challenged denial of application for leave to appeal by the Court of Special Appeals); *Sherman,* 323 Md. at 311, 593 A.2d at 670 (petitioner sought review of the denial by the Court of Special Appeals of his application for leave to appeal from the denial of post-conviction relief).

Second, the majority identifies a number of cases in which this Court reviewed the merits of a case after a CSA decision.[8] The majority concludes from these cases that a decision from the lower appellate court is a prerequisite to our review.[9] The majority supports this holding with the following, aforementioned, language in *Jourdan:*

Under Maryland Code (1974), § 12–202(1) of the Courts and Judicial Proceedings Article, this Court has no jurisdiction to review a decision of the Court of Special Appeals granting or denying leave to appeal in a post conviction proceeding. However, once the Court of Special Appeals grants leave to appeal in such a case and transfers the case to its appeal docket, the matter takes the posture of a regular appeal, and we do have jurisdiction under § 12–201 of the Courts and Judicial Proceedings Article to review the *Court of Special Appeals' decision on the appeal itself.*

275 Md. at 506 n. 4, 341 A.2d at 394–95 n. 4 (emphasis added by majority). Again, the majority ignores the more important proposition from this quote in *Jourdan,* which is that after the CSA "transfers the case to its appeal docket, the matter takes the posture of a regular appeal." It is the case's status as a regular appeal that allowed us "to review the [CSA's] decision[,]" and should allow us to exercise bypass *certiorari* here. The majority avoids this logical result by transforming the effect of the *Jourdan* rule in one case into a precondition in all cases.

The majority fails to support its interpretation of the *Jourdan–Williams* line of cases with any passage from those cases

**8.** *See, e.g., McElroy v. State,* 329 Md. 136, 145, 617 A.2d 1068, 1073 (1993); *Williams,* 292 Md. at 204–05, 438 A.2d at 1302; *Davis v. State,* 285 Md. 19, 22, 400 A.2d 406, 407 (1979); *State v. Ward,* 284 Md. 189, 193 n. 6, 396 A.2d 1041, 1044 n. 6 (1978); *Curtis v. State,* 284 Md. 132, 137, 395 A.2d 464, 466–68 (1978); *Moss,* 279 Md. at 564, 369 A.2d at 1013; *Jourdan,* 275 Md. at 505–06, 341 A.2d at 394–95.

**9.** "[T]his Court only has certiorari jurisdiction over the types of cases set forth in § 12–202 only when the Court of Special Appeals rendered a *decision* on the merits or the viability of the appeal or the status or rights of a party." (Maj. op. at 298, 6 A.3d at 919–20).

even hinting that our bypass jurisdiction under Section 12–203 is so limited. Indeed, these cases do not even mention our bypass jurisdiction. The cases simply show instances in which we have elected to grant certiorari in the circumstance that the CSA has decided the merits of the case.

The majority's second rationale is a statutory construction theory. Relying on the adage that in interpreting a statute, we must always take care that "no word, clause, sentence or phrase is rendered superfluous or nugatory", (Maj. Op. at 298, 6 A.3d at 919), the majority reasons that to allow these appeals would render superfluous Section 12–202's use of the word "granted." (Maj. Op. at 297, 6 A.3d at 919).

The familiar canon that "a provision should not be construed so as to render it nugatory[,]" *Bienkowski v. Brooks,* 386 Md. 516, 548, 873 A.2d 1122, 1141 (2005), is merely a restatement of one of the principles of a "plain language" statutory interpretation:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.
>
> **In construing the plain language,** a court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application. **Statutory text should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.** The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect.

*Kushell v. Dep't of Natural Res.,* 385 Md. 563, 576–577, 870 A.2d 186, 193 (2005) (emphasis added). The rule against rendering passages "nugatory," like any canon of statutory construction, is not absolute. In the unusual case where the

Legislature has not "meant what it said and said what it meant[,]" then the correct interpretation of the Legislature's intent may render words or passages superfluous:

[W]here words are found in a statute which appear to have been inserted through inadvertence or mistake, and which are incapable of any sensible meaning or are repugnant to the rest of the statute and tend to nullify it, and the statute is complete and sensible without them, they may be rejected as surplusage . . .

The cardinal rule of statutory construction is that the court should ascertain from the entire statute the intention to be accomplished by the enactment. **When that intention is clear it should be carried out, even though it may be necessary to strike out or insert certain words.**

(Emphasis added). *Pressman v. State Tax Commission,* 204 Md. 78, 88–90, 102 A.2d 821, 827–828 (1954).

We have long recognized that the current form of Section 12–202 is the rare example where the statute's plain language does not accurately represent the legislature's intent. As this Court explained in *Williams,* and in the majority's opinion in this case, the legislature never intended to give the statute any other meaning than its old form. For this reason, this Court has repeatedly declined to give full import to the plain language of the recodified version of the statute. In two cases, this Court looked to the original version of the statute, which clearly only barred the "granting or denying." *Williams,* 292 Md. at 208–11, 438 A.2d at 1304–05; *Grayson v. State,* 354 Md. 1, 11, 728 A.2d 1280, 1285 (1999). The majority recognizes our long line of Section 12–202 jurisprudence, and acknowledges twenty-nine years of legislative acquiescence to our interpretation in *Williams. See* Maj. Op. at 292, 6 A.3d at 916, *citing* Chapter 295 of the Maryland Laws of 1983, Chapter 233 of the Maryland Laws of 1991. The majority, however, draws a choke-chain around the *Jourdan–Williams* line of cases, and analyzes the statutory language anew.[10]

---

**10.** If the majority were to analyze the language of the statute, moreover, it should follow our approach from *Grayson,* and look at the

Moreover, despite the majority's assertions that it is engaging in a "plain language" interpretation, the majority fails to even address the plain language of Section 12–203:

> If the Court of Appeals finds that review of the case described in § 12–201 of this subtitle is desirable and in the public interest, the Court of Appeals shall require by writ of certiorari that the case be certified to it for review and determination. **The writ may issue before or after the Court of Special Appeals has rendered a decision.**

*Id.* (emphasis added). This statutory language makes it unmistakably clear that our bypass jurisdiction is coterminous with our jurisdiction to review a CSA decision on the merits under Section 12–201. The majority's attempt to wrench the two apart, based on the single word "granted" in Section 12–202, ignores the interdependent nature of Sections 12–201, 12–202, and 12–203, and the clearly expansive *certiorari* jurisdiction that the three sections give this Court.

Even if we were to follow the majority's premise that we must give meaning to each word in the current form of Section 12–202, I still disagree that my interpretation would render part of the statute nugatory. While admittedly, under my view, this Court would "always have [bypass] certiorari jurisdiction when the Court of Special Appeals grants leave to appeal," it does not follow that Section 12–202 would "apply only to denials of leave to appeal" and thus contain irrelevant words. Section 12–202 still bars review of the intermediate appellate court's *actual decision* to grant leave to appeal. There are no recorded cases in which we have considered such an appeal, but the nonexistence of these cases does not mean that the "grant" clause of Section 12–202 is nugatory. The State could request certiorari, arguing that the CSA abused its discretion

original statute. The pre-codification language includes the imperative that if "a review is desirable and in the public interest, the Court of Appeals shall require, by certiorari or otherwise, any such case to be certified to the Court of Appeals[.]" Maryland Code (1957, 1973 Cum.Supp.), Art. 5, § 21A. This clearly limits Section 12–202's reach, and is not rendered nugatory by our bypass jurisdiction.

in granting a post-conviction defendant's request for leave to appeal. An inmate, who was successful in an inmate grievance proceeding, could appeal the CSA's decision to grant the warden's request for leave to appeal. A criminal defendant, having pled guilty and received a sentence, could apply for *certiorari* on the grounds that the CSA should not have granted the State's application for leave to appeal an illegal sentence. In any of these cases, the "granted" part of Section 12–202 would preclude our issuing *certiorari*; indeed, we have never considered, in a written opinion, such an appeal.

My final problem with the majority's opinion is that it cannot be linked to any statutory purpose nor meaningful policy goal. The majority imposes a requirement here that this Court wait for a decision from the lower appellate court, even when this Court will likely issue *certiorari* after the decision. Yet, our bypass jurisdiction serves an obvious purpose: where a case is of pressing importance, we may address the case without waiting for a CSA decision. This process serves judicial economy and ensures more speedy justice in important cases. The majority's interpretation—that we have bypass jurisdiction for any case pending in the CSA *except for* the five statutory categories of Section 12–202, supports no meaningful policy goals and is inconsistent with the well-defined legislative intent that this Court have expansive *certiorari* jurisdiction.

In conclusion, I submit that the primary purpose of Section 12–202 was to relieve this Court of jurisdiction to review the otherwise high volume of complaints by convicted criminals seeking post-conviction relief that the CSA should have accepted their appeals. In doing so, the statute freed the Court to perform its other work.[11] I see no evidence of legislative intent to deprive the Court of its jurisdiction under Section

---

11. Incidentally, it also relieves us of jurisdiction to review the state's exceptions to the grant by the Court of Special Appeals's of leave to appeal in post-conviction decisions and the other categories of cases set forth in CJP Section 12–202.

**312**

12–203 to exercise its bypass jurisdiction of these types of cases, when it deemed them to be of sufficient public interest.

For the above-stated reasons, I dissent.

Judges HARRELL and RODOWSKY authorize me to state that they join in the views expressed in this dissenting opinion.