CHARLES CURTIS CHERRY *v.* STATE OF MARYLAND

[No. 244, September Term, 1969.]

*Decided May 6, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*John S. McInerney* for appellant.

*James F. Truitt, Jr., Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, William A. Linthicum, State's Attorney for Montgomery County*, and *Walter H. Madden, Assistant State's Attorney for Montgomery County*, on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The single issue in this case concerns the authority of the trial judge to impose more severe punishment upon the appellant, Charles Curtis Cherry, after his conviction for the same offense at a second trial, than the punishment imposed at his original trial.

Cherry was convicted of driving "under the influence of intoxicating beverage" in the People's Court of Montgomery County and was fined $350 of which $100 was suspended. He appealed to the Circuit Court for Mont-

418

gomery County and in a non-jury, *de novo* trial held on July 14, 1969, he was again found guilty and a sentence of thirty days confinement in the Montgomery County Detention Center was imposed. Upon his application, this Court granted a writ of certiorari in accordance with Md. Rule 1011 b.

At the time the thirty day jail sentence was imposed, the trial judge stated:

> "There is no doubt in the Court's mind you were drunk. As a matter of fact, I think the police were giving you a break sending you home in a taxi cab and then you just deliberately get in the truck, after you get the truck, after having been driven down there and drive it. You were zig-zagging across the road. The police were really being kind to you. You could have killed somebody while you were zig-zagging on the road. You had no right to get in the truck.
>
> "It is the sentence of the Court that you be confined to the Montgomery County Detention Center for a period of thirty days."

Three days later, on July 17, 1969, after taking testimony and hearing arguments on Cherry's motion to reduce his sentence, the trial judge announced:

> "The first break he had is when the policeman sent him home in a taxicab. The second break he had is when he came before the Peoples Court and they fined him.
>
> "I don't think I ought to penalize him for taking the appeal, but whether or not I am going to reduce his sentence, I don't know. I am interested to know whether or not, under this pending case of the Supreme Court of the United States, you can increase the sentence.
>
> . . .
>
> "The Court will take it under advisement and let you know."

Thereafter, on July 22, 1969, the motion to reduce

the sentence was denied, thus subjecting Cherry to thirty days in jail rather than the $250 fine imposed by the People's Court.

The issue here presented was considered by this Court in *Moon v. State,* 1 Md. App. 569, and we there held, on the authority of *Hobbs v. State,* 231 Md. 533, cert. denied, 375 U. S. 914 (1963), that the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States did not preclude the imposition of a greater sentence upon conviction after retrial where an accused's conviction had been set aside for errors in his original trial.

In *Hobbs* the Court of Appeals of Maryland was "concerned only with the results of a trial *de novo* where the accused was charged with the same crimes upon which he had been convicted in the original trial." The Court said: "On a trial *de novo* the court hears the case as if it were being tried for the first time, and considers the entire matters of verdict, judgment and sentence, as if there had been no prior trial." It then concluded: "Under these circumstances the imposition of new sentences in the second trial resulting in a greater period of confinement was not unlawful;" and stated: "In asking for and receiving a new trial, appellant must accept the hazards as well as the benefits resulting therefrom."

In affirming the decision of this Court in *Moon, supra,* the Court of Appeals, speaking through Chief Judge Hall Hammond, *Moon v. State,* 250 Md. 468, 474-475, concluded:

> "We perceive no present constitutional obstacle to continuing to follow the flat rule laid down in *Hobbs.* The Supreme Court has not disturbed increased sentences on retrial. It did not do so in *Hobbs. See also Stroud v. United States,* 251 U. S. 15, 64 L. Ed. 103 (1919) (in which, on retrial, a death sentence replaced a life sentence given at the first trial) ; *Robinson*

v. *United States* (6th Cir. 1944), 144 F. 2d 392, *aff'd* 324 U. S. 282, 89 L. Ed. 944 (1945) (a death sentence replaced a life sentence). *See also Green v. United States*, 355 U. S. 184, 194, 2 L. Ed. 2d 199, 208 (1957), Note 15 (in which a jury's finding of second degree murder was held to be an implied acquittal of first degree murder which precluded again putting the accused in jeopardy for first degree murder)— '*Stroud* * * * is clearly distinguishable'; *Cichos v. Indiana*, 385 U. S. 76, 17 L. Ed. 2d 175 (1966). In *United States v. Tateo*, 377 U. S. 463, 12 L. Ed. 448 (1964), both *Stroud* and *Robinson* are cited as existing and viable authority. The Supreme Court denied certiorari in *Patton*, 390 U. S. 905 (1968), but at 389 U. S. 889 it also denied it in *United States ex rel. Starner v. Russell* (3rd Cir. 1967), 378 F. 2d 808, which had refused to follow *Patton* and had reached an opposite result."

Chief Judge Hammond carefully analyzed the holding in *Patton v. North Carolina*, 381 F. 2d 636 (1967), where the United States Circuit Court of Appeals for the Fourth Circuit held that "a sentence may not be increased following a successful appeal, even where additional testimony has been introduced at the second trial" which would furnish " 'colorable reason for harsher punishment'." The Court concluded: "In order to prevent abuses, the fixed policy must necessarily be that the new sentence shall not exceed the old."

The Maryland Court of Appeals was "unpersuaded that *Patton* is sound." The Court asserted (pp. 478, 479) :

"If the *Patton* rationale were valid it would be logically difficult if not impossible to justify the validity of the newly enacted procedures, recommended after extensive study by an able and experienced committee and approved by the bar, for the review of sentences in criminal

cases. See Maryland Rule 762, 'Review of Sentence,' which was authorized by Ch. 288 of the Laws of 1966. Under the Rule (762 b 3) the convicted man's application for review must contain the statement that he understands his present sentence may be increased by the review panel. Chapter 288, in enacting § 134 of Art. 26 of the Code, provided that the review panel shall have the power to order an increased as well as a decreased sentence."

Judge Hammond then stated that "[i]f we assume that the flat rule of *Hobbs* should be replaced * * * and that we shall hereafter make such a modification in a proper case, we see no reason to disturb the judgment and [increased] sentence imposed" at Moon's second trial. He pointed out that there was no indication that Moon's sentence was increased "because he had elected to have a new trial or for any other unworthy or improper motive. There is substantial indication that the second sentence reflected the extent to which facts, revealed at the second trial but not at the first, put Moon in a bad light, and showed him to be a greater threat to society than had first been thought. * * * We think there was no constitutional bar to the giving of the increased sentence and that the record supports factually its permissibility and propriety." [1]

Since *Hobbs, Patton* and *Moon,* the Supreme Court of the United States has had occasion to consider and pass upon the question of increased sentences upon convictions after retrials in the cases of *North Carolina v. Pearce* and *Simpson v. Rice,* 395 U. S. 711, hereafter designated as *Pearce.* In *Wayne v. State,* 8 Md. App. 5, we held,[2] that *Pearce* was not to be applied retroactively "[i]n view of the absence of a decision by the Supreme

---

1. Certiorari was granted by the Supreme Court of the United States in *Moon v. Maryland,* 395 U. S. 975, and arguments have been scheduled.
2. Orth, J., dissenting.

Court and in view of the settled Maryland law prior to *Pearce* that an increased sentence on retrial was within the discretion of the second trial judge, *Moon v. State,* 250 Md. 468, 243 A. 2d 564, \* \* \*." The retroactivity of *Pearce,* however, is not a factor here since the decision therein was announced on June 23, 1969, and Cherry's second trial, conviction and sentence took place on July 14, 1969. It is apparent, therefore, that the principles announced in *Pearce* and the holding therein are controlling, *pro tanto,* in the case at bar.

Mr. Justice Potter Stewart delivered the opinion of the Court in *Pearce* and stated at the outset: "The problem before us involves two related but analytically separate issues. One concerns the constitutional limitation upon the imposition of a more severe punishment after conviction for the same offense upon retrial. The other is the more limited question whether, in computing the new sentence, the Constitution requires that credit must be given for that part of the original sentence already served." He then proceeded to analyze the latter issue and, after pointing out that the Court had held in *Benton v. Maryland,* 395 U. S. 784 (decided the same day as *Pearce*) that the Fifth Amendment guarantee against double jeopardy is enforceable against the States through the Fourteenth Amendment, stated: "We hold that the Constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense."

Mr. Justice Stewart then proceeded to consider "the broader problem of what constitutional limitations there may be upon the general power of a judge to impose upon reconviction a longer prison sentence than the defendant originally received." After considering the arguments advanced that the double jeopardy clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment are constitutional barriers to the imposition of harsher punishment on retrial, Justice Stewart stated (at page 723):

"We hold, therefore, that neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' *Williams v. New York*, 337 U. S. 241, 245, 69 S. Ct. 1079, 1082, 93 L. Ed. 1337. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources."

Justice Stewart was careful to point out, however:

"To say that there exists no absolute constitutional bar to the imposition of a more severe sentence upon retrial is not, however, to end the inquiry. There remains for consideration the impact of the Due Process Clause of the Fourteenth Amendment.

"It can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside."

And he then concluded (p. 725):

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play

no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

It is apparent that the validity of the 30 day jail sentence imposed upon Cherry, which patently is a more severe sentence than the fine imposed at his original trial, must be weighed in light of the principles and procedures announced in *Pearce*. We turn to the record before us and it becomes crystal clear that there was not even a semblance of compliance with the procedural commands enunciated in *Pearce*.

It is evident from the language employed by the judge at the time sentence was first imposed upon Cherry that the judge was relating the sentence to the factual situation which was developed in the course of the just completed *de novo* trial over which he had presided and rendered judgment. There is not the slightest indication that he gave any thought to the sentence received by Cherry at his trial in the People's Court or that any consideration was given to Cherry's conduct subsequent

thereto. The judge simply meted out a sentence which he thought appropriate under the circumstances revealed in the trial before him.

From a reading of his remarks, three days later, at the time he considered the motion to reduce the 30 day jail sentence, it becomes clear that he did consider at that time the original sentence imposed upon Cherry for he said: "The second break he had is when he came before the People's Court and they fined him." It has been argued that this statement, alone, demonstrates "a vindictiveness" against Cherry for having taken the appeal and that the force of this argument is not diluted by the judge's assertion that "I don't think I ought to penalize him for taking the appeal * * *." We need not consider this argument, and accordingly set it aside, for it is evident that the sentence imposed did not comply with the procedural precepts of *Pearce*.

Under *Pearce*, before an increased sentence may be imposed upon reconviction for the same offense at a second trial, (1) the reasons for the increased sentence must affirmatively appear; (2) the reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the original sentence is imposed; and (3) the factual data upon which the increased sentence is based must appear as a part of the record. There was no compliance with any of these elements by the sentencing judge at Cherry's second trial and, accordingly, the increased sentence was constitutionally impermissible. The case will be remanded and the lower court should vacate the increased sentence and impose a sentence in accordance with the principles and procedures set forth in this opinion.

We have considered, and find to be without merit, the State's contention that *Pearce* is here inapplicable because "the type of case to which the *Pearce* holding applies is obviously one which was begun at the Circuit Court level, was appealed to a higher court, and a new

426

trial awarded *on a point of law."* See *Hobbs v. State, supra,* and *Moulden v. State,* 217 Md. 351.

> *Judgment affirmed, except as to the sentence;*
>
> *Case remanded; the increased sentence to be vacated; and sentence imposed in accordance with this opinion.*