600 A.2d 1189

**Neal WILLEY**

v.

**STATE of Maryland.**

**No. 513, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Feb. 5, 1992.

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City on the brief), Baltimore, for appellee.

Submitted before MOYLAN, GARRITY and ALPERT, JJ.

ALPERT, Judge.

This appeal involves a dispute over an increase of sentence imposed after a successful appeal.

### *Procedure below*

On February 22, 1988, Neal Willey, III, appellant, appeared before Judge Themelis of the Circuit Court for Baltimore City on the charge of assault and battery upon Kimberly Jackson. The court imposed probation before judgment and placed Willey on three years of supervised probation. On March 1 and 7 of 1988, Willey assaulted Jackson and Chris Luecking. Willey was convicted of two out of the four charges lodged against him in the District Court for Anne Arundel County. Those convictions became final on February 3, 1989. Thereafter, on December 7, 1989, Judge Themelis held a violation of probation hearing. The court decided to revoke Willey's probation.

> I'm going to strike probation before judgment and enter in lieu thereof a finding of guilt. I'm going to impose 14 years to the Division of Correction....

Willey appealed that decision to our court. In an unreported opinion, *Willey v. State,* (Md.Ct.Spec.App. No. 190, September Term, 1990, filed: December 5, 1990) Slip Op., we reversed the judgment and remanded the case for a hearing before a different judge because the lower court had predetermined guilt.[1]

In the interim, Willey was convicted of murder in the Circuit Court for Baltimore County.

---

1. The lower court learned, outside of the record, that Willey fatally shot Venus Ann Shifflett.

On April 2, 1991, Judge Friedman of the Circuit Court for Baltimore City held the second violation of probation hearing. This time, the court imposed a sentence of fifteen years on Willey.[2]

> THE COURT: All right. This case comes before me today with a most unfortunate history. There is no doubt about that. I think that the death of the victim in the case, for which Mr. Willey was convicted of first degree murder and use of a handgun in the commission of a crime of violence would not have occurred if Mr. Willey had not gone to wherever that woman [Shifflett] was and shot her.... Mr. Willey is apparently a dangerous and deadly man.
>
> All right. The Court had previously in this case granted probation before judgment, so that the judgment was stayed. Judgment in this case is reinstated, and the probation before judgment is struck. And I impose a sentence of 15 years consecutive to the sentence which Mr. Willey is presently serving....

Willey appeals his sentence and asks whether his sentence is illegal.

## I.

In his brief, Willey contends that his sentence of fifteen years "represents an illegal increase in Appellant's sentence resulting from a successful appeal." To support his position, Willey cites *Jones v. State*, 307 Md. 449, 514 A.2d 1219 (1986) and § 12–702(b) of the Courts Article.

> (b) *Remand for sentence or new trial; limitations on increases in sentences.*—If an appellate court remands a criminal case to a lower court in order that the lower

---

**2.** The court considered the previous sentence "a nullity because he [Judge Themelis] considered the murder [of Shifflett]." In fact, Judge Friedman did not know or want to know what sentence Judge Themelis gave Willey.

THE COURT: I don't want to know. I don't know what sentence Judge Themelis imposed in this case.

court may pronounce the proper judgment or sentence, or conduct a new trial, and if there is a conviction following this new trial, the lower court may impose any sentence authorized by law to be imposed as punishment for the offense. However, it may not impose a sentence more severe than the sentence previously imposed for the offense unless:

(1) The reasons for the increased sentence affirmatively appear;

(2) The reasons are based upon additional objective information concerning identifiable conduct on the part of the defendant; and

(3) The factual data upon which the increased sentence is based appears as part of the record.

At the time of the *Jones* decision [3] § 12-702(b)(2) read as follows:

(2) The reasons are based upon objective information concerning identifiable conduct on the part of the defendant occurring after the original sentence was imposed. . . .

In *Briggs v. State*, 289 Md. 23, 421 A.2d 1369 (1980), the Court of Appeals examined the background of § 12-702. The Court noted that "[t]he operative language of the statutory enactment derives from *North Carolina v. Pearce*, 395 U.S. 711 [89 S.Ct. 2072, 23 L.Ed.2d 656] [1969]. . . ." [4] *Briggs*, 289 Md. at 27-28, 421 A.2d 1369.

---

**3.** The Court of Appeals handed down the *Jones* decision on September 30, 1986.

**4.** The *Pearce* Court stated that

[i]n order to assure the absence of such a motivation [vindictiveness], we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant *occurring after the time of the original sentencing proceeding*. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

Subsequent to the United States Supreme Court decision in *Pearce,* our court adopted the *Pearce* standard in *Cherry v. State,* 9 Md.App. 416, 425, 264 A.2d 887, *cert. granted,* 259 Md. 730 (1970).[5] The *Briggs* Court pointed out that "[w]ith no decisions of this Court to guide them, the Court of Special Appeals in *Cherry v. State, supra,* elected to join those courts which had held that the principles announced in *Pearce* apply with equal force to a trial *de novo." Briggs,* 289 Md. at 29, 421 A.2d 1369.[6]

Shortly thereafter, "the Maryland General Assembly, by its enactment effective July 1, 1972, rewrote Article 5, section 43 of the Maryland Code to include the expansion of the *Pearce* doctrine as enunciated in *Cherry." Briggs,* 289 Md. at 29, 421 A.2d 1369. The United States Supreme Court took a different tack.

In *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Supreme Court decided that the prophylactic rule announced in *Pearce* did not apply to the judge of a superior panel when resentencing a defendant following a *de novo* trial on appeal from an inferior tribunal. *Colten,* 407 U.S. at 118, 92 S.Ct. at 1961. Lately, the Supreme Court has backed away from *Pearce. Wasman v.*

---

*Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081 (emphasis added).

**5.** In *Cherry* we stated,
> [u]nder *Pearce,* before an increased sentence may be imposed upon reconviction for the same offense at a second trial, (1) the reasons for the increased sentence must affirmatively appear; (2) the reasons must be based upon objective information concerning identifiable conduct on the part of the defendant *occurring after the original sentence is imposed;* and (3) the factual data upon which the increased sentence is based must appear as a part of the record.

*Cherry,* 9 Md.App. at 425, 264 A.2d 887 (emphasis added). The Court of Appeals withdrew the writ of certiorari as having been improperly granted and denied the petition.

**6.** The *Pearce* rule applied only to sentences following retrial before the same judge. The doctrine sought to keep judicial vindictiveness out of the sentencing process. *Texas v. McCullough,* 475 U.S. 134, 138, 106 S.Ct. 976, 978–79, 89 L.Ed.2d 104 (1986) ("Beyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial.").

*United States,* 468 U.S. 559, 571, 104 S.Ct. 3217, 3224, 82 L.Ed.2d 424 (1984) (plurality opinion) ("We conclude that any language in *Pearce* suggesting that an intervening conviction for an offense committed prior to the original sentencing may not be considered upon sentencing after retrial, is inconsistent with the *Pearce* opinion as a whole."); *see Texas v. McCullough,* 475 U.S. 134, 144, 106 S.Ct. 976, 982, 89 L.Ed.2d 104 (1986) ("It is appropriate that we clarify the scope and thrust of *Pearce,* and we do so here.").

In light of the Supreme Court's retreat from *Pearce,* the State asked the Court of Appeals to reinterpret § 12–702(b) in *Jones v. State,* 307 Md. 449, 514 A.2d 1219 (1986). The Court refused.

Jones had been tried and convicted of, "among other things, robbery with a deadly weapon." *Jones,* 307 Md. at 451, 514 A.2d 1219. On that conviction, Judge Raker of the Circuit Court for Montgomery County sentenced him to nine years of imprisonment. *Jones,* 307 Md. at 451, 514 A.2d 1219. In an unreported opinion, *Jones v. State,* (Md. Ct.Spec.App. No. 361, September Term, 1983, filed: December 22, 1983) Slip Op., we reversed the conviction. *Jones,* 307 Md. at 451, 514 A.2d 1219. Another jury reconvicted Jones of the same offense. *Jones,* 307 Md. at 451, 514 A.2d 1219. At sentencing, Judge Mitchell considered Jones's record. The "record listed a number of criminal offenses that Jones had *committed* before his first trial but of which he had not been *convicted* until after it." *Jones,* 307 Md. at 451, 514 A.2d 1219. The State persuaded Judge Mitchell that under Supreme Court decisions, he could increase the sentence—effectively, ignoring § 12–702(b). The judge apparently agreed with the State, "for he gave Jones 12 years." *Jones,* 307 Md. at 452, 514 A.2d 1219.

The Court of Appeals, taking the opposite position, stated that "on its face, § 12–702(b) bars an increase in sentence under the circumstances of this case." *Jones,* 307 Md. at 453, 514 A.2d 1219. Additionally, the Court explained why it chose not to reinterpret § 12–702(b) in a manner that would reflect current Supreme Court ideology. The Court

pointed out that the Legislature was presumptively aware of the *Briggs* decision (construing the "conduct" provision of § 12–702(b)(2)) [7] and did not amend that subsection. *Jones*, 307 Md. at 455, 514 A.2d 1219. Furthermore, the Legislature met two times after the *Wasman* case was handed down and did not amend the subsection. *Jones*, 307 Md. at 455, 514 A.2d 1219. Thus, the Court declared, "This supports our view that § 12–702(b) is a statement of legislative policy that stands independent of current Supreme Court notions of what due process may require." *Jones*, 307 Md. at 455, 514 A.2d 1219.

Unfortunately, Willey fails to perceive that the Legislature amended the language of § 12–702(b)(2), effective July 1, 1988.[8] According to Sutherland,

The legislature is presumed to know the prior construction of terms in the original act, and an amendment

---

7. See discussion, *infra* pages 358–359.

8. House Bill 1139 amended § 12–702(b) as follows:
   The reasons are based upon ~~additional~~ [added] objective information concerning identifiable conduct on the part of the defendant ~~occurring after the original sentence was imposed~~ [deleted].
   The Executive Committee of the Maryland Judicial Conference (Conference) was unanimous in its *opposition* to the bill. Letter from James H. Norris, Jr., Executive Secretary, Maryland Judicial Conference, to Honorable William S. Horne, Delegate, Maryland House of Delegates (Feb. 23, 1988) (Letter). The Conference proposed HB 718, which bore a superficial resemblance to HB 1139.
   According to Norris's letter,
   [a]n increased sentence under HB 718, to the contrary [meaning HB 1139], must be based upon an event occurring after imposition of the first sentence. The Conference bill is thus designed to address the problem of *Jones v. State*, 307 Md. 449 [514 A.2d 1219] (1986), in which the Court of Appeals interpreted the present statute not to permit an increased sentence even though the defendant in that case had committed another crime, because conviction for that crime had not occurred when the original sentencing took place.
   House Bill 718 was read the first time and referred to the Committee on the Judiciary. Apparently, the bill never progressed from there. House Bill 1139, on the other hand, became the law of Maryland. Thus, we can safely say that the Legislature intended to remove the time limitation on the defendant's conduct that the sentencing court could use when deciding whether to increase the defendant's sentence.

substituting a new term or phrase for one previously construed indicates that the judicial or executive construction of the former term or phrase did not correspond with the legislative intent and a different interpretation should be given the new term or phrase.

1A Sutherland, Statutes and Statutory Construction (by N.J. Singer) § 22.30 at 265 (Sands 4th ed. 1984 rev.); *cited with approval in, In re Criminal Investigation No. 1–162,* 307 Md. 674, 689, 516 A.2d 976 (1986). The present language of § 12–702(b)(2) is incongruous with Willey's position. The Legislature added the word "additional" and deleted the phrase "occurring after the original sentence was imposed." Thus, as the State points out, "Willey eschews any constitutional basis for his claim and bottoms his assertion solely on construction given to an earlier version of ... § 12–702(b) by the Court of Appeals in *Jones v. State. . . .*" (Footnote omitted.)

■ With the correct statute in mind, we consider whether Willey's sentence is illegal. At the outset, we note that "[s]entencing is a matter left largely to the discretion of the trial judge. . . ." *Hill v. State,* 64 Md.App. 194, 197, 494 A.2d 757, *cert. denied,* 304 Md. 298, 498 A.2d 1185 (1985). Normally, we review sentences to determine whether: (1) they constitute cruel and unusual punishment or violate some other constitutional guarantee; (2) the sentencing judge was motivated by ill-will, prejudice or other impermissible considerations; and (3) the sentence falls within the statutory limitations. *Hill,* 64 Md.App. at 197, 494 A.2d 757. In the instant case, Willey does not complain under (1) or (2), rather, his contention is a variant of (3). After reviewing the transcript of the second probation hearing, we conclude that Willey's sentence is legal.

■ At the second probation violation hearing, Judge Friedman stated the reasons for Willey's increased sentence.

THE COURT: All right. This case comes before me today with a most unfortunate history. There is no doubt

about that. I think that the death of the victim in the case, for which Mr. Willey was convicted of first degree murder and use of a handgun in the commission of a crime of violence would not have occurred if Mr. Willey had not gone to wherever that woman [Shifflett] was and shot her.... Mr. Willey is apparently a dangerous and deadly man.

Judge Friedman told the State and the defense that she did not want to know what sentence Judge Themelis gave Willey.[9] Thus, she sentenced Willey without reference to or knowledge of the prior sentence. She could have given Willey more time, less time, or the same amount of time that Judge Themelis gave him. The sentence she gave was one year longer than the sentence given by Judge Themelis. The increased sentence was proper because the record reflected that Willey had been convicted of the murder of Shifflett. The State, pursuant to an agreed statement of facts, made representations to Judge Friedman about the murder conviction.

[MR. COHEN FOR THE STATE] Subsequently, Your Honor, August 27, 1989 the Defendant committed a crime of homicide, the victim being a girlfriend Venus Shifflett. On December 10, of 1990, defendant [w]as convicted of murder in the first degree and use of a handgun in the commission of a crime of violence, received a sentence of life plus 20 years from Baltimore County Circuit Court.

State would offer into evidence, a true test copy of the Baltimore County conviction as well as the Statement of Charges indicating the offense occurred August 27, 1989, which is also during the period which the Defendant was on probation for Judge Themelis.

The reasons for the increased sentence were based upon additional objective information concerning identifiable conduct on Willey's part. Judge Friedman stated that "Mr. Willey is apparently a dangerous and deadly man." The murder conviction (objective information) buttressed her

---

9. See *supra* note 2.

subjective view. We are aware that the term "conviction" is not synonymous with the word "conduct." *Briggs,* 289 Md. at 32, 421 A.2d 1369. The *Briggs* Court pointed out that "[a] conviction does not constitute criminal behavior or conduct on the part of a defendant, but merely judicially establishes its previous occurrence." *Briggs,* 289 Md. at 32, 421 A.2d 1369. Judge Friedman found, after hearing the statement of facts and Willey's corrections, that Willey was convicted of murder.

> THE COURT: All right. All right. Stand up, sir. I find based on the Statement of Facts that the Defendant is in violation of his probation for violation of Condition No. 4,[10] having been convicted of three subsequent offenses, all of which occurred while he was on this probation.

Thus, the trial court observed the judicially established previous criminal conduct. The record contains the factual data upon which the increased sentence was based. In addition, Willey did not contest his murder conviction. He did, however correct the date.

> [MR. COHEN] That essentially, Your Honor, would be the Statement of Facts.
>
> MR. PARKER [WILLEY'S COUNSEL]: Mr. Willey, any additions or corrections to the facts?
>
> THE DEFENDANT: Yes. There are several dates on here that are incorrect.
>
> .    .    .    .    .
>
> THE COURT: All right, any other corrections?
>
> THE DEFENDANT: There was a date here, being convicted of first degree murder on December 10, '90, that was the date I was sentenced I was convicted on October 15th.

Under the current version of § 12–702(b)(2), Judge Friedman took proper notice of Willey's conduct (murder of Shifflett) by way of his murder conviction. Therefore, we hold that Willey's second sentence is not illegal because the

---

**10.** Obey all laws.

**360**

record reflects that the exceptions to § 12–702(b) have been met.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.