*State of Maryland v. Philip Daniel Thomas*
No. 73, September Term 2018


**Criminal Procedure – Appeal – Authority of Trial Court to Resentence Defendant When Sentence is Subject of Pending Appeal – Mootness.**  After the defendant was resentenced by the Circuit Court following a remand, he appealed that sentence, contending that the new sentence was illegal.  The Court of Special Appeals agreed and issued an opinion to that effect.  Before the Court of Special Appeals issued its mandate and before the time for the State to file a petition for a writ of *certiorari* to the Court of Appeals had expired, the Circuit Court resentenced the defendant again in accordance with the views expressed in the opinion of the Court of Special Appeals.  The Court of Appeals subsequently granted the State's petition for a writ of *certiorari* on the issue of the legality of the original sentence.  The defendant moved to dismiss the appeal as moot.  In the meantime, the Circuit Court vacated the sentence it had imposed while the case was pending in the Court of Appeals.  The Court of Appeals held that the appeal was not moot.


**Criminal Procedure – Sentencing – Resentencing After Appeal.**  The initial sentence of imprisonment received by the defendant was comprised of consecutive sentences for two offenses that should have been merged into one another for purposes of sentencing. After the Court of Special Appeals vacated that sentence on appeal, the Circuit Court, on remand, resentenced the defendant to a maximum period of incarceration for the greater offense that was equal to the maximum period of incarceration under the original aggregate sentence.  However, the minimum period of incarceration that the defendant would serve before becoming eligible for parole consideration was longer under the new sentence than under the original sentence.  The new sentence was illegal because it violated a State statute that generally prohibits imposition of a "more severe" sentence following a successful appeal by a criminal defendant.
Maryland Code, Courts & Judicial Proceedings Article, §12-702(b).

Circuit Court for Wicomico County
Case No. 22-K-16-000031
Argument: May 2, 2019

IN THE COURT OF APPEALS
OF MARYLAND

Docket No. 73

September Term, 2018

_____

STATE OF MARYLAND

v.

PHILIP DANIEL THOMAS

_____

Barbera, C.J.
*Greene
McDonald
Watts
Hotten
Getty
Booth,

JJ.

_____

Opinion by McDonald, J.

_____

Filed: August 9, 2019

*Greene, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On occasion, a court may be called upon to resentence a defendant in a criminal case after an appeal. This can happen when a conviction is overturned on appeal and the defendant is again convicted following remand, or when a conviction is upheld but the initial sentence is determined to be illegal. In both instances, the defendant must be sentenced again. A State statute limits the sentencing court's discretion in those circumstances. In general, a circuit court ordinarily may not impose a "more severe" sentence on remand following an appeal.

Respondent Philip Daniel Thomas was convicted of several crimes in the Circuit Court for Wicomico County. He received an aggregate sentence of 18 years in prison – 15 years for kidnapping, and three years consecutive for second-degree assault. On direct appeal the Court of Special Appeals vacated the sentence, ruling that the kidnapping and assault convictions should have merged for sentencing purposes. On remand, the Circuit Court resentenced Mr. Thomas to 18 years in prison for the kidnapping offense alone.

Although the new sentence was identical to the original sentence in terms of the maximum duration of confinement, the parole eligibility date under the new sentence was different. Under his original sentence, Mr. Thomas would have been eligible for parole after seven and one-half years; under the new sentence, he would not become eligible for parole until he had served nine years in prison.

Another appeal ensued, and the Court of Special Appeals held that his new sentence was illegal as "more severe" than his original sentence. We agree with the Court of Special

Appeals that two sentences of equal maximum length but with different parole eligibility dates are not equivalent to one another. The sentence with the later parole eligibility date is more severe than the other.

# I

# Background

## A.    *Statutory Provisions concerning Punishment for Criminal Offenses*

The General Assembly sets general State policy on punishment for criminal offenses in various statutes. For example, statutes set forth the penalty that a court may impose for specific offenses, specify maximum and minimum sentences, limit a sentencing court's discretion in certain respects, and establish minimum periods of confinement before a defendant becomes eligible for release on parole. This case involves two such statutes: (1) a statute that limits the discretion of a sentencing court when a defendant is to be resentenced following a successful appeal and (2) a statute that sets a defendant's eligibility for release on parole from imprisonment for certain offenses.

### 1.    A Limit on Resentencing – CJ §12-702(b)

If a conviction is reversed on appeal and the defendant is convicted again, or if a sentence is overturned on appeal, the defendant will need to be resentenced. A State statute limits the sentencing court's discretion in those circumstances. That statute provides:

> If an appellate court remands a criminal case to a lower court in order
> that the lower court may pronounce the proper judgment or sentence,
> or conduct a new trial, and if there is a conviction following this new
> trial, the lower court may impose any sentence authorized by law to be
> imposed as punishment for the offense. However, it *may not impose a*
> *sentence more severe than the sentence previously imposed* for the
> offense unless:

2

(1) The reasons for the increased sentence affirmatively appear;

(2) The reasons are based upon additional objective information concerning identifiable conduct on the part of the defendant; and

(3) The factual data upon which the increased sentence is based appears as part of the record.

Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §12-702(b) (emphasis added). Thus, a court may not impose a "more severe" sentence on remand unless the three statutory criteria are met.

2.      Eligibility for Release from Imprisonment on Parole

The General Assembly has established different minimum periods of imprisonment before a criminal defendant sentenced to a term of imprisonment is eligible for release on parole, depending on the offenses for which the defendant has been convicted. A defendant is ordinarily eligible for parole after serving one-fourth of the defendant's aggregate sentence. Maryland Code, Correctional Services Article ("CS"), §7-301(b)(1). A defendant convicted of a violent crime, however, is not eligible for parole until the defendant has served "the greater of" (1) one-half of the defendant's aggregate sentence for violent crimes or (2) one-fourth of the defendant's total aggregate sentence. CS §7-301(c). Other statutory provisions not pertinent to this case establish other constraints on an inmate's eligibility for parole. *E.g.*, Maryland Code, Criminal Law Article, §14-101(c)-(f); *see also Carter v. State*, 461 Md. 295, 318-22 (2018).

3

This case concerns whether parole eligibility established by statute for a particular sentence is a factor in assessing whether one sentence is "more severe" than another for purposes of CJ §12-702(b).

## B.    *Procedural History*

Mr. Thomas was charged in the Circuit Court for Wicomico County with various offenses arising from an incident in December 2015.  Following a trial in June 2016, the jury found him guilty of kidnapping, second-degree assault, false imprisonment, driving under the influence of alcohol, and driving while impaired.[1]

*2016 Sentence and Appeal*

On June 17, 2016, the Circuit Court sentenced Mr. Thomas to 15 years imprisonment on the kidnapping conviction, and three years imprisonment on the second-degree assault conviction to run consecutively to the sentence for kidnapping.  The Circuit Court also sentenced Mr. Thomas to one year for driving under the influence, to be served concurrently with the sentences on the other charges.  The false imprisonment and driving while impaired convictions were merged, respectively, into the kidnapping and driving under the influence convictions and did not result in separate sentences.  Thus, the aggregate sentence was 18 years imprisonment.  We shall refer to this sentence as the "2016 Sentence."[2]

---

[1] The issues in this appeal do not turn on the facts of the underlying offenses. Accordingly, we will dispense with attempting to summarize the evidence at the trial.

[2] As will be seen, Mr. Thomas has been sentenced three times in this case and the primary issue in this appeal concerns a comparison of the first two of those sentences.  It happens that each of the three sentencings took place during a different calendar year.  To

4

Mr. Thomas appealed, in part on the ground that the Circuit Court erred in imposing separate sentences for the kidnapping and second-degree assault convictions. The State conceded that Mr. Thomas was correct as to that issue. In an unreported opinion, the Court of Special Appeals also agreed, holding that the second-degree assault conviction should have been merged into the kidnapping conviction for purposes of sentencing. *Thomas v. State*, 2017 WL 2482469 (2017). The Court of Special Appeals vacated the 2016 Sentence and remanded the case for resentencing. Apparently with CJ §12-702(b) in mind, the Court of Special Appeals instructed the Circuit Court that "the total of appellant's new sentences not exceed the current total of 18 years' imprisonment." *Id.* at *14. The intermediate appellate court also cited *Twigg v. State*, 447 Md. 1, 30 (2016), in which this Court held that, for purposes of CJ §12-702(b), the total aggregate sentence after remand should be compared to the total aggregate sentence prior to remand (as opposed to comparing sentences for each individual count).[3]

---

distinguish among these sentencings, we will refer to them by the calendar year during which each was imposed.

[3] In *Twigg*, the circuit court initially imposed an aggregate sentence of 40 years imprisonment comprised of consecutive sentences related to convictions of three offenses and a suspended sentence for conviction of a fourth offense. The Court held that one of the offenses for which a consecutive sentence was imposed should have been merged into the conviction for the fourth offense. The Court further held that, on remand, the circuit court could resentence the defendant on the other counts that were not merged without violating CJ §12-702(b), so long as the new aggregate sentence did not exceed the original sentence of 40 years imprisonment.

*2017 Sentence and Appeal*

On August 9, 2017, Mr. Thomas was resentenced. Consistent with the direction from the Court of Special Appeals, the Circuit Court merged the second-degree assault conviction into the kidnapping conviction for sentencing purposes. Over a defense objection, the court imposed a sentence of 18 years imprisonment on the kidnapping count alone ("2017 Sentence"). The 2017 Sentence was thus identical to the 2016 Sentence in terms of the maximum amount of time that Mr. Thomas could spend in prison – 18 years. But the two sentences were not identical in another critical respect – at least critical to one who must serve the sentence – eligibility for parole.

Because kidnapping is a "crime of violence,"[4] the minimum term of imprisonment that Mr. Thomas would serve before becoming eligible for parole was longer under the 2017 Sentence than under the 2016 Sentence. The parole eligibility math for the sentences imposed on Mr. Thomas works out as follows. Under the 2016 Sentence, one-half of the aggregate sentence for violent crimes (15 years for kidnapping) would be seven and one-half years while one-fourth of the total aggregate sentence (18 years) would be four and one-half years. The *greater of* those two periods is seven and one-half years – which is the period of incarceration that Mr. Thomas would serve before becoming eligible for parole under the 2016 Sentence. Under the 2017 Sentence, one-half of the aggregate sentence for

_____

[4] Maryland Code, Criminal Law Article, §14-101(a)(3). That statute also provides for enhanced sentences and limits parole eligibility for persons who have been convicted of multiple crimes of violence.

6

violent crimes (18 years for kidnapping) would be nine years – the period of incarceration that Mr. Thomas would serve before becoming eligible for parole under the 2017 Sentence.

The upward change in the minimum term to be served by Mr. Thomas before he became eligible for parole prompted the defense objection to the 2017 Sentence in the Circuit Court. The defense argued that the resulting delay in parole eligibility under the 2017 Sentence compared to the 2016 Sentence meant that the Circuit Court had effectively "increased" Mr. Thomas' sentence when it imposed the 2017 Sentence, in violation of the statutory proscription against imposing a "more severe" sentence on remand.

Mr. Thomas appealed the new sentence, reiterating the argument he made in the Circuit Court. The Court of Special Appeals agreed that the 2017 Sentence was illegal because it violated CJ §12-702(b). It vacated the 2017 Sentence, reasoning that "a resentence that delays a defendant's parole eligibility date, as in appellant's case, is a 'more severe' sentence prohibited by [CJ] §12-702 absent statutory justification." *Thomas v. State*, 239 Md. App. 483, 495 (2018).

The State filed a petition for a writ of *certiorari* posing a single question related to the legality of the 2017 Sentence under CJ §12-702(b). We granted the State's petition on March 5, 2019 to address that issue. In the meantime, however, there had been further developments in the Circuit Court that have generated another issue that we must decide along the way.

*2019 Sentence During Appeal*

The Court of Special Appeals published its opinion in this case on November 28, 2018. Before the intermediate appellate court issued its mandate (and four days before the

State timely filed its petition for *certiorari*), the Circuit Court resentenced Mr. Thomas on January 4, 2019 to 15 years for the kidnapping offense ("2019 Sentence").[5] By any measure, such a sentence is not "more severe" than the 2016 Sentence[6] and thus does not raise the same issue as the 2017 Sentence. The resentencing was apparently an effort on the part of the Circuit Court to implement the then-recent holding of the intermediate appellate court.

After this Court granted *certiorari*, the State filed a motion in the Circuit Court to vacate the 2019 Sentence on the ground that the Circuit Court lacked jurisdiction or authority to resentence Mr. Thomas at the time it imposed the 2019 Sentence, and that the 2019 Sentence, as the product of a "mistake" or "irregularity," could be corrected pursuant to Maryland Rule 4-345(b).[7] On April 15, 2019, the Circuit Court granted the State's motion and vacated the 2019 Sentence. On May 2, 2019, Mr. Thomas noted an appeal

---

[5] The State filed its petition on January 8, 2019. The State's appellate counsel was unaware of the 2019 Sentence at the time the petition was filed. The Court of Special Appeals later issued its mandate on January 11, 2019.

Mr. Thomas has filed a motion to include the transcript of the January 4, 2019, sentencing hearing in the record for this appeal. The State did not oppose that motion, although it differed with Mr. Thomas on the significance of that resentencing. We deferred ruling on the motion to supplement the record in advance of oral argument. We now grant that motion.

[6] Under the 2019 Sentence, the maximum time Mr. Thomas could be incarcerated is 15 years, compared to 18 years under the 2016 Sentence. He would be eligible for parole after seven and one-half years in prison under both sentences.

[7] That rule provides that a court "has revisory power over a sentence in case of fraud, mistake, or irregularity."

from the Circuit Court's April 15, 2019 order. That appeal has been set for argument in the Court of Special Appeals in March 2020.

*Motion to Dismiss Appeal*

In the meantime, the 2019 proceedings in the Circuit Court generated additional activity in this Court. After the Circuit Court imposed the 2019 Sentence but before it vacated that sentence, Mr. Thomas filed in this Court a motion to dismiss this appeal. He argued that the 2019 Sentence rendered the present appeal moot. In the alternative, he requested that the Court dismiss the writ of *certiorari* as having been improvidently granted. Unsurprisingly, the State opposed that motion.

We deferred a decision on Mr. Thomas' motion, allowed the parties to address the issue at oral argument, and will decide that motion as part of this opinion.

## II

## Discussion

### A. *Whether this Appeal is Moot*

Mr. Thomas has moved to dismiss this appeal as moot in light of the 2019 Sentence, or alternatively to dismiss the writ of *certiorari* as improvidently granted. In his motion, he reasoned that, once the Circuit Court sentenced him to a maximum term of 15 years imprisonment in the 2019 Sentence, there was no longer any issue under CJ §12-702(b) as the 2019 Sentence is not "more severe" than the 2016 Sentence. Accordingly, he had obtained the relief he sought on appeal and the issue on which the Court granted *certiorari* no longer exists. The State responded by questioning the jurisdiction and the authority of

9

the Circuit Court to impose the 2019 Sentence before the appeal process had reached its conclusion.[8]

Past decisions of this Court have explained that a circuit court retains "fundamental jurisdiction" of a case while it is on appeal.[9]  However, a circuit court may not exercise that jurisdiction in a way that frustrates the appellate process and any circuit court action that does so will be subject to reversal for that reason.[10]  Even if a circuit court has exercised

---

[8] The State also initially opposed Mr. Thomas' motion as untimely under Maryland Rule 8-603(a)(4).  It subsequently withdrew that argument when Mr. Thomas renewed the motion in his appellate brief.  *See* Maryland Rule 8-603.

[9] Beginning in 1980, this Court has recognized, in several decisions, that a circuit court retains fundamental jurisdiction while a case is on appeal.  *See Pulley v. State*, 287 Md. 406, 414-19 (1980) (trial court had fundamental jurisdiction to retry defendant while denial of defendant's motion to dismiss on double jeopardy grounds was on appeal); *State v. Peterson*, 315 Md. 73, 79-82 (1989) (circuit court acted within its fundamental jurisdiction when it conducted second probation revocation hearing with parties' assent while issue related to first probation revocation hearing was on appeal, thus rendering appeal moot); *In re Emileigh F.*, 355 Md. 198, 202 (1999) (juvenile court had fundamental jurisdiction to close CINA case while appeal of custody decision in that case was pending in Court of Appeals); *Cottman v. State*, 395 Md. 729, 742 (2006) (circuit court had fundamental jurisdiction to grant motion for new trial in criminal case while appeal of conviction at initial trial was pending).

A recent opinion of this Court quoted a pre-*Pulley* decision to the effect that an appeal brings the subject matter of the appeal within the "exclusive jurisdiction of the appellate court."  *State v. Simms*, 456 Md. 551, 576 (2017).  However, that case concerned the power of the State to *nolle pros* charges in the trial court after an appeal is taken.  We do not read it as a retreat from those cases that have discussed a circuit court's continuing fundamental jurisdiction during the pendency of an appeal.

[10] *See, e.g., In re Emileigh F.*, 355 Md. at 202-04 (vacating juvenile court's decision to close CINA case and terminate its own jurisdiction while appeal was pending, which interfered with right of appellant to prosecute the appeal concerning a child custody ruling); *see also Jackson v. State*, 358 Md. 612, 620 (2000) ("any post-judgment ruling by a circuit court that [precludes or hampers the appellate court] may be subject to reversal on appeal, but it is not void *ab initio* for lack of jurisdiction to enter it").

its fundamental jurisdiction in a way that moots an issue in a pending appeal, this Court may still express its views on that issue.[11]

The Circuit Court's actions in this case following the recent decision of the Court of Special Appeals, while no doubt a conscientious effort to comply with that decision, have thus raised some complex questions. Was the 2019 Sentence an exercise of the Circuit Court's fundamental jurisdiction? Even if the Circuit Court had jurisdiction, did it have authority to take that action while the case was still on appeal? Even if the Circuit Court should have refrained from exercising its fundamental jurisdiction while the case was on appeal, did the 2019 Sentence nevertheless render this appeal moot? Even if this appeal is moot, should we still express our views concerning the interpretation of CJ §12-702(b)?

The answers to such questions will have to wait for another day. Rightly or wrongly, the Circuit Court has now vacated the 2019 Sentence. The Court of Special Appeals may, in its consideration of the appeal of that ruling, be called upon to untangle the consequences of the Circuit Court's recent actions during the pendency of this appeal.[12] But the short answer for us is that the Circuit Court action that allegedly mooted this appeal – the 2019 Sentence – is no longer in effect. The appeal, at least for the moment, is not moot. We therefore deny Mr. Thomas' motion to dismiss the appeal. That is all we need to decide.

---

[11] *See, e.g., State v. Peterson*, 315 Md. at 82-90.

[12] Or perhaps it will not, given the decision we reach on the merits below.

11

### B.     *Whether the 2017 Sentence Was Illegal*

As indicated above, when a trial court resentences a defendant in a criminal case after remand following a successful appeal by the defendant, the court "may not impose a sentence *more severe* than the sentence previously imposed" unless three criteria are satisfied.  CJ §12-702(b) (emphasis added).  In this case, there is no contention that the three criteria that would justify a more severe sentence are satisfied.  Thus, the question in this appeal is straightforward:  For purposes of CJ §12-702(b), are sentences of the same maximum duration but with different parole eligibility dates equivalent, or is the sentence with the later parole eligibility date more severe?   If two such sentences are equivalent, then the 2017 Sentence complied with Maryland law.  If the sentence that carries a later parole eligibility date is more severe, then the 2017 Sentence was illegal.

Whether a sentence is legal is a question of law and, accordingly, we consider that question anew, without any special deference to the views of the Circuit Court or the Court of Special Appeals.  *See Bonilla v. State*, 443 Md. 1, 6 (2015); *Blickenstaff v. State*, 393 Md. 680, 683 (2006).

The answer to this question turns on interpretation of the phrase "more severe" in CJ §12-702(b).  Statutory interpretation is an effort to discern and carry out the intent of the Legislature.  That effort begins with an examination of the statutory text, usually continues with a review of the legislative history to confirm conclusions drawn from or resolve questions raised by the text, and may also include consideration of the consequences of alternative readings of the statute.  *Blue v. Prince George's County*, 434

12

Md. 681, 689 (2013). Prior case law construing the statute in question or similar enactments in other jurisdictions may also be consulted.

*Text*

The point of comparison in CJ §12-702(b) is whether one sentence is "more severe" than another. The benchmark is not whether a sentence is "longer" or states more years of imprisonment. It would, of course, be easier if one could simply compare two numbers. But a sentence may include elements besides a period of incarceration – *e.g.*, a fine, an order of restitution, a period of probation, and so on. Indeed, a sentencing court may impose no period of incarceration at all or may suspend a period of incarceration that is imposed. The use of the phrase "more severe" in the statute appears to recognize that the constraint imposed by CJ §12-702(b) may involve more than simply consideration of a stated period of incarceration.[13]

To be sure, the text of CJ §12-702(b) makes no specific reference to parole eligibility. But neither does it refer explicitly to imprisonment or other potential elements of a sentence. As we frequently repeat, the text of a statute should be interpreted according to its plain meaning and must be given a common-sense reading. *Junek v. St. Mary's County Department of Social Services*, ___ Md. ___, ___ (2019), slip op. at 5. From a common-sense perspective, a sentence of 18 years imprisonment with a parole eligibility

---

[13] *Cf. United States v. Barash*, 428 F.2d 328, 331 (2d Cir. 1970) (prohibition against more severe punishment on remand applies regardless of form of punishment "whether it is imprisonment, suspended sentence with probation, fine, … or any other corrective measure the court may provide.").

date of nine years is "more severe" than a sentence of 18 years imprisonment with a parole eligibility date of seven years and six months. No doubt, ten out of ten inmates would agree with that proposition.

It is also notable that, in applying the plain language of CJ §12-702(b), this Court has not measured sentence severity solely by comparing the potential maximum period of incarceration. That is evident from our recent decision in *Nichols v. State*, 461 Md. 572 (2018). One of the issues in *Nichols* was whether an aggregate sentence of 80 years imprisonment imposed on remand from an appeal was "more severe" than the original aggregate sentence of life imprisonment with all but 50 years imprisonment suspended. The Court held the aggregate 80-year sentence was more severe, even though the defendant could theoretically serve a longer maximum period of incarceration under a suspended life sentence. The Court observed that, even if the defendant violated his probation in the future after serving the 50-year term, a court would not necessarily re-impose a life sentence for the violation. 461 Md. at 607-8. The Court thus viewed the sentence from the practical perspective of one who must serve such a sentence. A sentence of 80 years active incarceration is "more severe" than a sentence that includes 50 years active incarceration even if there is a possibility that a future probation violation could transform the latter sentence into a life sentence.

*Legislative History*

The history of CJ §12-702(b) demonstrates that its underlying purpose is to allow a defendant convicted in a criminal case to seek appellate review without concern that he or she will pay a price, in terms of a more severe sentence, for exercising that right. The

history of the statute reveals that it was designed to prevent both the reality and the "apprehension" of judicial "vindictiveness" in response to a defendant's exercise of the right to appeal.

The enactment of CJ §12-702(b) in 1973 predated the time when the General Assembly systematically preserved bill files. Thus, we do not have the sort of legislative history materials that we consult for more recent legislation. Luckily, there are other sources that document the origin and purpose of this statute.

CJ §12-702(b) derives from the United States Supreme Court's decision a half century ago in *North Carolina v. Pearce*, 395 U.S. 711 (1969). The *Pearce* decision consolidated two cases in which convictions had been reversed as a result of post-conviction proceedings. The defendants were retried and convicted again. In one case, the trial court imposed a new sentence that extended the defendant's time in custody by three years; in the second case, the sentence was increased from 10 years imprisonment to 25 years imprisonment without any credit for the time already served.

The Supreme Court observed that it would be a "flagrant violation" of the Due Process Clause of the Fourteenth Amendment for a trial court to adopt a policy of imposing a heavier sentence after a successful appeal by a defendant. 395 U.S. at 723-24. The Court noted that the possibility of a harsher sentence on remand would have a chilling effect on the exercise of a right of appeal and that a retaliatory motive by a sentencing judge could be extremely difficult to prove. *Id.* at 724-25 & n.20. The Court stated that "vindictiveness against a defendant for having successfully attacked [the defendant's] first conviction must play no part in the sentence [the defendant] receives after a new trial" and that a defendant

15

should be free from "the fear of such vindictiveness." 395 U.S. at 725-26. To avoid any "apprehension of such a retaliatory motivation," the Supreme Court issued the following prescription:

> [W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for [the judge's] doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record…

*Id.* at 725-26. As is evident from the quotation above, the Supreme Court held that a sentencing court may not impose a "more severe" sentence on remand from a successful defense appeal unless there are (1) articulated reasons, (2) based on objective data, (3) that appear in the record – in language virtually identical to that now found in CJ §12-702(b).

The similarity of the language in *Pearce* to that of the later-enacted CJ §12-702(b) is, of course, not a coincidence. The General Assembly codified the language of the *Pearce* opinion into Maryland statutory law during the early 1970s in two enactments. A year after the *Pearce* decision, the Court of Special Appeals applied *Pearce* to overturn an increase in sentence after a trial *de novo* following an appeal to a circuit court from the predecessor of the District Court. *Cherry v. State*, 9 Md. App. 416 (1970). In 1972, the General Assembly codified the holding of *Cherry* when it amended the statute (then codified at Maryland Code, Article 5, §43) governing *de novo* appeals in a circuit court from a criminal trial in the District Court. Chapter 181, §6, Laws of Maryland 1972. That amendment prohibited a circuit court from imposing a more severe sentence than the District Court unless the three criteria specified in *Pearce* were satisfied.

16

The following year, in one of the first parts of modern code revision, the Legislature adopted a new Courts & Judicial Proceedings Article. Chapter 2, 1st Special Session, Laws of Maryland 1973. As part of that law, the General Assembly adopted the language and criteria of *Pearce* more generally in CJ §12-702(b).[14] The Revisors Note to the statute stated explicitly that it was derived from *Pearce* on the understanding that "[t]his rule is required by the Due Process Clause of the 14th Amendment of the United States Constitution." *Id*. at 375-76. In a contemporary law review article concerning the new Courts & Judicial Proceedings Article, the director of code revision reiterated that "[t]he *Pearce* decision is codified in section 12-702(b)." William H. Adkins, II, *Code Revision in Maryland: The Courts and Judicial Proceedings Article*, 34 Md. L. Rev. 7, 52 (1974).

In the years after the *Pearce* decision, the Supreme Court has retreated significantly from what some have referred to as the "presumption of vindictiveness" in *Pearce*. *See* 6 W.R. LaFave, et al., Criminal Procedure §§26.8(b), (c) (describing cases). However, the General Assembly has retained CJ §12-702(b) largely as it was originally enacted. *See Jones v. State*, 307 Md. 449, 454 (1986). Thus, the prophylactic policy underlying *Pearce* – to prevent either the reality or the "apprehension" of judicial vindictiveness – remains part of Maryland statutory law.[15]

---

[14] Former Article 5, §43 concerning *de novo* appeals from the District Court became what is now CJ §12-702(c). In *Colten v. Kentucky*, 407 U.S. 104 (1972), the Supreme Court declined to extend the *Pearce* holding in the context of a trial *de novo*. The Legislature subsequently modified the rule on sentencing following a trial *de novo*. Chapter 294, Laws of Maryland 1983.

[15] One of the three criteria in CJ §12-702(b) for imposing a more severe sentence was amended in a minor respect not pertinent to this appeal. Chapter 722, Laws of

*Consequences of Alternative Construction*

The alternative construction of CJ §12-702(b) proposed by the State is to look solely at the stated length of a period of incarceration to compare the severity of two sentences. This would reduce compliance with CJ §12-702(b) to a simple numerical comparison.[16] But, in our view, this would lead to anomalous results. For example, under that approach, a life sentence *without* the possibility of parole would be no more severe than a life sentence

Maryland 1988. In other respects, including the use of the phrase "more severe," CJ §12-702(b) remains identical to what the General Assembly initially adopted.

[16] In arguing that parole eligibility should not be considered in assessing whether one sentence is more severe than another, the State cites a statutory provision that requires a sentencing court to inform a defendant convicted of a violent crime of the minimum time that the defendant must serve in prison before becoming eligible for parole. *See* Maryland Code, Criminal Procedure Article ("CP") §6-217. That statute states that the court's recitation concerning parole eligibility is "for information only and is not part of the sentence." CP §6-217(b). The statute further provides that a court's failure to provide this information to the defendant does not affect the "legality or efficacy" of the sentence. CP §6-217(c). These provisions simply recognize that eligibility for parole is set by statute once the sentencing court announces the specific terms of the sentence. The sentencing court has no discretion to vary the eligibility date directly, although it may indirectly affect that date in how it has configured a sentence based on multiple counts involving offenses with different parole eligibility dates. This statute is an effort to have a sentencing court make plain to the defendant what is implicit in the sentence that the court pronounces.

The State also attempts to distinguish parole as an "executive function" and refers to the "exclusive authority" that the Maryland Parole Commission ordinarily exercises as to whether an inmate is released on parole. That argument, however, confuses the *granting* of parole with *eligibility* for parole. Once a sentencing court structures a sentence, eligibility for parole is dictated by statute. Neither the Parole Commission nor any other executive branch agency determines whether an inmate is *eligible* for parole; the Parole Commission's discretion concerns the *granting* of parole.

*with* a possibility of parole.[17]  No one would "apprehend" those two sentences as equivalent.  It is also well-established that such a distinction in parole eligibility may sometimes render one sentence illegal while the other is not.  *See*, *e.g.*, *Carter v. State*, *supra*.

This is not to say that assessing whether one sentence is "more severe" than another will always be an easy task.  The State suggests a hypothetical case in which a trial court imposes a sentence on remand that is shorter, in terms of the maximum period of imprisonment, than the original sentence, but under which the defendant must wait longer to be eligible for release on parole.  That would have been the situation in this case, for example, if the Circuit Court had resentenced Mr. Thomas to 16 years on the kidnapping count alone.  Such a sentence would be shorter than the 2016 Sentence in terms of the potential maximum period of incarceration (16 years versus 18 years).  However, because kidnapping is a crime of violence, the minimum period of incarceration – the period before one is eligible for parole – would be six months *longer* than under the 2016 Sentence (eight years versus seven and one-half years).  It may be that we, or another court, will be called upon to decide the relative severity of two such sentences sometime in the future, presumably with the considered views of the State and defense counsel in light of the particular facts and circumstances of that case.  But that case is not before us today.  *See Phillips v. State*, 451 Md. 180, 193 (2017) ("The Court does not issue advisory opinions").

---

[17] *See* CS §7-301(d) (under life sentence with possibility of parole, the defendant becomes eligible for parole after 15 or 25 years depending on the offense for which the defendant was convicted).

19

Using the maximum period of incarceration under a sentence as the sole benchmark of sentence severity is easy, but it flies in the face of reality. *See, e.g., Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 658 (1974) (the precise time at which an offender becomes eligible for parole, even though not stated in the sentence itself, "is implicit in the terms of a sentence"). Consideration of the other elements that affect the severity of a sentence may occasionally be more difficult and require considered judgment, but it is also more realistic and consistent with the underlying policy of CJ §12-702(b). Given a choice between easy but unrealistic on the one hand and the exercise of judgment to be fair and true to the statute on the other, we choose the latter.[18]

---

[18] In an argument of less general application, the State notes that, in this case, the Court of Special Appeals specified in its initial opinion overturning the 2016 Sentence that the new aggregate sentence on remand must not exceed a total of 18 years imprisonment (although it did not dictate any particular sentence). The State further notes that the 2017 Sentence complied with that direction. The State cites *Greco v. State*, 427 Md. 477 (2012), to argue that this compliance with an instruction from an appellate court effectively insulates the 2017 Sentence from challenge under CJ §12-702(b).

*Greco*, however, dealt with a situation in which the circuit court had imposed a sentence that was illegal because it was more lenient than the law allowed. The circuit court in *Greco* had apparently intended to impose a split sentence of life imprisonment with all but 50 years suspended, but failed to include a period of probation to follow the executed period of imprisonment. That had the effect of reducing the sentence, by operation of law, to a straight 50-year sentence, which was not a legal sentence for the offense of first-degree murder. This Court held that the 50-year term could not serve as a cap on the sentence on remand, as any subsequent sentence would also be illegal. 427 Md. at 511 (allowing the 50-year term to be a cap on any sentence imposed on remand would require trial court to impose "illegal sentences ad infinitum"). The Court thus instructed the circuit court on remand to correct the illegality by adding "some period of probation" to its original sentence of life imprisonment with all but 50 years suspended. *Id*. at 513.

Thus, apart from the fact that the Court of Special Appeals in this case did not specifically direct the Circuit Court to impose the 2017 Sentence in any particular length or configuration, this case is distinguishable from *Greco* in that the element of the sentence

*Case Law from Other Jurisdictions*

Courts in other jurisdictions that have been called upon to assess the relative severity of otherwise identical sentences with different parole eligibility dates have reached the same conclusion that we do. For example, *United States v. Bello*, 767 F.2d 1065 (4th Cir. 1985), involved circumstances very similar to this case. The defendant was originally sentenced to an aggregate 17-year sentence. The appellate court vacated convictions on some of the counts that were lesser included offenses of another count. On remand, the trial court re-configured the sentence so that the aggregate term of confinement was identical to that of the original sentence. However, while the defendant would have been eligible for parole under the first sentence, under the new sentence configuration the statutes governing parole precluded his release on parole. In overturning the new sentence, the Fourth Circuit explained succinctly that "[w]e have no doubt that the subsequent sentence is more severe than the original one." 767 F.2d at 1068.

In its opinion in this case the Court of Special Appeals canvassed the decisions of other courts that have considered whether a longer wait for parole eligibility renders an otherwise identical sentence "more severe" under *Pearce*. 239 Md. App. at 491-95. There is no need to repeat that excellent survey here. It suffices to say that the vast majority of courts confronted with this question have come to the same conclusion that we do.[19]

---

prescribed by the appellate court in *Greco* – *i.e.*, the addition of a period of probation – was necessary to correct, and to avoid perpetuation of, the illegal nature of the prior sentence.

[19] The only jurisdiction that clearly holds a contrary view appears to be South Dakota. *See State v. Semrad*, 794 N.W.2d 760, 763-64 (S.D. 2011) ("[b]ecause parole

*Summary*

The 2016 Sentence and 2017 Sentence are identical in terms of the maximum period of incarceration that Mr. Thomas might have to serve. However, because the 2017 Sentence requires that he serve an additional one and one-half years before he has any hope of release on parole there is no question that anyone who had a choice between the two sentences would choose the 2016 Sentence. From the practical perspective of the person serving a sentence, who is the person who might be deterred from exercising a right of appeal due to an "apprehension" of judicial vindictiveness, there is no question that the 2017 Sentence is more severe.

## III

## Conclusion

If, following a successful appeal, a defendant in a criminal case is resentenced to a term of imprisonment of equal length to the original sentence but with a later parole eligibility date, the new sentence is "more severe" than the original sentence for purposes of CJ §12-702(b). Accordingly, the 2017 Sentence was more severe than the 2016 Sentence and Mr. Thomas must be resentenced.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY WICOMICO COUNTY.**

---

eligibility is not a part of a defendant's sentence, we have recognized … delaying parole eligibility do[es] not increase a defendant's sentence").

22